[Crim. No. 669.   Fifth Dist.   July 30, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DANNY MACK MARTIN, Defendant and Appellant.

H. W. Bailey, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Robert A. Fowler, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Appellant appeals from the judgment of conviction entered on the jury's verdict finding him guilty of

second degree burglary in violation of Penal Code section 459. He presents three main contentions for reversal: that there was insufficient evidence to justify the jury's verdict, that it is inherently improbable that he committed the burglary, and that during the trial errors of law occurred which resulted in a miscarriage of justice.

The facts upon which this appeal is predicated are essentially these: On July 7, 1968, at approximately 10:25 p.m., the police dispatcher of the City of Fresno received a report that a burglary was in progress in a medical building located in the vicinity of North Fresno Street. A patrol car was dispatched immediately, and a few minutes later several policemen arrived at the scene. They discovered that a window in Dr. Robert Lusk's office had been smashed, and a ball peen hammer was found lying close by in the shrubbery.

A short time later one of the officers who was checking outside heard someone crashing through the bushes at the rear of the building. Then he saw two men running from the back of the building. The officer ordered the men to halt, and when they failed to heed his command gave pursuit. One of the subjects, appellant, slipped and fell; the second subject stopped to help appellant get up and then took off running. However, appellant slipped again and was apprehended. The other subject eluded arrest.

An examination of the doctor's office disclosed that the rear door to the office was unlocked. Microfilm and pills were scattered about the floor in the interior of the office, and a drug cabinet was found open. A pair of gloves and a smoked cigarette were also found on the floor. Later, Dr. Lusk stated that he locked the door when he left earlier during the day and that the gloves and smoked cigarette were unfamiliar.

At the trial appellant denied burglarizing Dr. Lusk's office. He testified that he was in the vicinity of the medical building to visit a woman named Evelyn Blevins who lived in a nearby apartment, and as he walked down the driveway of the medical complex, he saw a man suddenly run from one of the offices and heard someone shout, ''There he goes.'' He said that he also ran but fell when he reached the street and that the other man did not stop to assist him when he slipped but, rather, paused for a car or for some other reason.

Turning first to the alleged errors, the record indicates that after appellant admitted that he had been convicted of a felony involving possession of narcotics in 1962, the prosecutor forced appellant to also admit that the narcotics were

demerol, morphine sulfate tablets and opium and belladonna suppositories. Then the following transpired:

"MR. PITTS: . . .

"Isn't it a fact, Mr. Martin, at that time in 1962 you were addicted to the use of narcotic drugs?

"A. No, sir, that is not a fact.

"Q. Did you have possession of these drugs, because you were selling them, you were a peddler?

"A. No, sir, I was using these drugs, but I wasn't addicted to them.

"Q. Now, isn't it a fact that you obtained possession of these drugs that you were found with on February 7, 1962, by burglarizing the Village Drug Company on the night of February 5? A. No, that's definitely not true.

"Q. Isn't it a fact these bottles, these drugs that were found in your possession matched the serial numbers of the serial numbers of the drugs in the Village Drug Company?

"A. I don't know. I don't know where they came from.

"Q. Isn't it a fact you had a cut on your leg that had been recently sutured when you were arrested on February 7, 1962?

"MR. KAZATO: Again, your Honor, the fact if the defendant had possession of these bottles doesn't mean he burglarized this Village Drug Store.

"THE COURT: "Well, Counsel, I'll disallow this line until you have connected the cross-examination on the problem at hand, the case that happened."

Thus, while appellant concedes that it was proper for the prosecutor to ask him whether he had been convicted of a felony and, if so, the nature of the felony, he argues that the prosecutor was not entitled to ask for the details. Appellant also argues that the prosecutor's questions concerning the alleged burglary were irrelevant and highly prejudicial.

We conclude that it was proper for the prosecutor to show that appellant's 1962 narcotics conviction involved possession of demerol, morphine sulfate tablets, opium and belladonna. Appellant was accused of burglarizing a doctor's office, and the fact that he was previously convicted of possession of dangerous drugs commonly found in a doctor's office was relevant to prove that he was familiar with, and possibly even addicted to, the use of such drugs. This in turn was relevant to establish appellant's motive for breaking into Dr. Lusk's office, and hence to prove his intent to steal, an essen-

tial element to the crime for which he was charged in the information. And, since the court thoroughly and accurately instructed the jury on the limited purpose for which the jury could consider appellant's narcotics conviction, no error was committed in this respect. ■ It is firmly settled that evidence of other crimes to prove a relevant or material fact, other than that the accused is predisposed to commit crime, is admissible (*People* v. *Lopez*, 60 Cal.2d 223 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924]).

■ Appellant's secondary contention that the trial judge also erred when he allowed the prosecutor to question him about the burglary is also without substantial merit. The prosecutor was obviously attempting to show that the drugs found in appellant's possession in 1962 were stolen during a burglary committed under circumstances essentially similar to the circumstances surrounding the burglary for which appellant stood charged, and hence to prove a "common plan, scheme, system or design." However, after appellant denied the burglary the trial judge disallowed any further questions in this respect. Thus, since appellant's trial counsel did not charge the prosecutor with bad faith or cite him for misconduct, appellant cannot complain for the first time on appeal (*People* v. *Varnum*, 70 Cal.2d 480, 488 [75 Cal.Rptr. 161, 450 P.2d 553]; Witkin, Cal. Criminal Procedure (1963) § 748, p. 722).

We turn to appellant's contention that the evidence was insufficient to sustain the jury's verdict of burglary in the second degree. He argues that while microfilm and drug samples were scattered about the floor, the doctor could not determine that anything had been taken. He also argues that appellant was not seen entering or leaving the medical building nor was anything from the doctor's office found in his possession when he was apprehended at the scene. He therefore vigorously asserts that although there was substantial evidence of a breaking and entering into Dr. Lusk's office, the evidence was insufficient to establish that appellant was the guilty party or, if so, that he intended to commit theft, as charged in the information.[1]

Admittedly, the evidence upon which appellant was convicted was entirely circumstantial. ■ However, the

---

[1] An intent to commit a felony was not charged in the information. Appellant was merely charged with intent to commit theft. (See *People* v. *Wilson*, 158 Cal.App.2d 553 [322 P.2d 966].)

corpus delicti of a crime may be established by circumstantial evidence (*Reed* v. *Superior Court*, 238 Cal.App.2d 321, 322 [47 Cal.Rptr. 815]; *People* v. *Conley*, 220 Cal.App.2d 296 [33 Cal.Rptr. 866]). ▮ And when the "totality of the circumstances" of the instant case is considered, there was sufficient circumstantial evidence to justify the jury's verdict. ▮ First, there was substantial evidence of a breaking and entering into Dr. Lusk's office, and it is the rule that a burglarious intent can reasonably be inferred from an unsuccessful entry alone (*People* v. *Jordan*, 204 Cal.App.2d 782, 786 [22 Cal.Rptr. 731]). ▮ Second, appellant and another man were seen running from the back of the building by a police officer shortly after the police arrived at the scene. Then, to fortify the highly incriminating circumstance of two men running from the scene of a burglary, appellant did not satisfactorily explain his presence in the back of the medical building and why he and his companion fled when hailed by a policeman and then failed to heed his command to stop. Appellant merely stated that he was in the vicinity of the building to visit a woman by the name of Evelyn Blevins who lived nearby, but he did not produce her at the trial nor was such a person known to either the telephone company or the gas and electric company. He also stated that he did not know the other man who was running but did not satisfactorily explain why the man stopped to help him when he fell. ▮ It is settled that a person's flight from the scene of a burglary, without reasonable explanation, is evidence of his participation in the burglary. ▮ As this court stated in *People* v. *Jordan, supra*, 204 Cal.App.2d 782, 786-787: "Burglarious intent can reasonably be inferred from an unlawful entry alone. (Citations.) Even if no crime be committed after the entry, circumstances such as flight after being hailed by an occupant of the building . . . without reasonable explanation of the entry, will warrant the conclusion by a jury that the entry was made with the intention to commit theft." [5c] Third, as we have already stated, appellant's felony conviction in 1962 established his motive for breaking into the doctor's office and was an additional incriminating circumstance in the chain of circumstantial evidence weaved by the prosecution to connect appellant to the crime.

Appellant's final contention that it was inherently improbable that he committed the burglary because he was on parole and wearing blue pants, an orange sweater and smooth

soled leather shoes is so devoid of merit that no further comment is necessary.

The judgment is affirmed.

Stone, Acting P. J., concurred.

A petition for a rehearing was denied August 28, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1969.