[Crim. No. 30486. Second Dist., Div. Four. Mar. 15, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
SAM ROGER SMITH, Defendant and Appellant.

## COUNSEL

Frank Morales for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JEFFERSON (Bernard), J.—By information, defendant was charged with the offense of burglary committed on August 31, 1976, in violation of Penal Code section 459. It was alleged that, on the date in question, defendant entered the apartment occupied by Eva Operskalski with the intent to commit larceny. The information was subsequently amended to add the allegation after the phrase "with the intent to commit larceny" the words "and or assault by means likely to produce great bodily injury." Defendant entered a plea of not guilty. Trial was by jury, with the jury finding defendant guilty of burglary and finding the burglary to be burglary of the first degree. Defendant's motion for new trial was denied, proceedings were suspended, and defendant was placed on probation for a period of three years under specified terms and conditions. Defendant has appealed from the judgment of conviction.

On August 31, 1976, Eva Operskalski returned to her apartment at about 10:30 p.m. She lived in one of eight units in an apartment complex at 1418 Colby in West Los Angeles. Eva lived alone.

After talking on the telephone and showering, Eva went into her kitchen, where she peeled some fruit. After doing this she proceeded to her bedroom. Before entering the bedroom, she noticed that the bedroom door was at an odd angle and not the way she left it. She pushed the door, expecting it to go back against the wall, but the door did not give. At that moment a man stepped from behind the door with a small knife or some other hard object in his left hand. He was about three feet from Eva. She looked straight in his face, screamed, and ran out of the front door of her apartment. She recognized the intruder as the defendant, who was a resident of the apartment complex. Although there was no light on in the bedroom, the light was on in the hall of Eva's apartment so that she was able to recognize the intruder whom she faced at her bedroom door.

When Eva returned to her bedroom with the police, the intruder was gone. An inspection of the apartment established that no property was missing. An inspection of Eva's bedroom revealed that one of two windows which she had left open only about two inches had been opened all the way. A screen on the window had been bent and removed and a chair was found at the foot of the window on the outside of the building which would enable a person to gain access to the bedroom through the window.

Several tenants came out of their apartments upon hearing Eva's screams as she ran from her apartment. Approximately 30 to 40 seconds after Eva's screams, George Centeno, one of the tenants in the apartment complex, observed defendant emerge from behind the apartment complex on the same side as Eva's bedroom window. Defendant walked towards George and then walked up the stairs into his own apartment. Defendant was wearing light powder blue pajama pants and a white pullover shirt.

Approximately five to ten minutes later, defendant emerged from his apartment wearing different clothes—a sports shirt and cut-off jeans.

Defendant's defense was an alibi. Defendant attacks the judgment on two grounds. One ground urged for reversal is that the evidence was insufficient to sustain a conviction for burglary. The second ground urged is that several errors were committed with respect to the court's instructions.

I

*Sufficiency of the Evidence To Support*
*Defendant's Conviction of Burglary*

In contending that the evidence was insufficient to support a conviction for burglary, defendant directs his attack upon the issue of defendant's intent to commit theft or to commit an assault by means of force likely to produce great bodily injury. Defendant argues that the evidence is insufficient to establish the necessary felonious intent to steal because there was no taking of any property from Eva or from her apartment, or any attempt to take any property.

With respect to the evidence regarding an intent to commit an assault by means of force likely to produce great bodily injury, defendant points

out that the evidence simply shows defendant's presence in the victim's apartment with a knife or some object in his hand and that defendant made no movement toward the victim which could be construed as an attempt to harm her. Defendant asserts that, in the absence of some such aggressive action, it would be speculative to draw an inference that defendant intended to commit an assault by means of force likely to produce great bodily injury.

■ This contention of defendant is lacking in merit. It is true that the key question in issue here is defendant's "intent" at the time of his entry into the victim's apartment, and such intent, as a mental fact, must usually be proved by circumstantial evidence. "[S]uch intent must usually be inferred from all the facts and circumstances disclosed by the evidence, rarely being directly provable." (*People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752].) In *Matson*, the court held that evidence that the defendant entered a female victim's apartment surreptitiously, hid in her bathroom with the lights out, and then denied under oath that he had done so was sufficient to support a finding of entry with intent to rape.

■ In the case at bench, although we do not have denial testimony from defendant such as appeared in *Matson*, we have the factor that defendant was armed with a knife or other object of substance. (See *People* v. *Shepardson* (1967) 251 Cal.App.2d 33 [58 Cal.Rptr. 809].) ■ The fact that no crime has been committed following entry into a structure does not preclude a finding of a felonious intent upon entry. (*People* v. *Moody* (1976) 59 Cal.App.3d 357 [131 Cal.Rptr. 923].) Any variety of circumstances may be sufficient to establish the necessary felonious intent. ■ Thus, it has been held that "an intent to commit theft at the time of entry may be inferred from flight from the premises." (*Moody, supra,* 59 Cal.App.3d 357, 363; see *People* v. *Martin* (1969) 275 Cal.App.2d 334 [79 Cal.Rptr. 769].) ■ "When the evidence justifies a reasonable inference of felonious intent, the verdict may not be disturbed on appeal." (*Matson, supra,* 13 Cal.3d 35, 41.)

## II

### *The Validity of the Court's Instructions Regarding Specific Intent*

■ One contention made by defendant is that the trial court gave misleading and ambiguous instructions regarding the necessary specific

intent for the offense of burglary. Defendant asserts that as a result of the instructions regarding specific intent, the jury was not told that defendant could be convicted of burglary only if the evidence established that, upon entry into Eva's apartment, he had the specific intent to commit an assault by means of force likely to produce great bodily injury.

The trial judge gave CALJIC instruction No. 14.50 as follows: "Every person who enters any structure of the type shown by the evidence in this case, with the specific intent to steal, take and carry away the personal property of another of any value with the specific intent to deprive the owner permanently of his property or to commit an assault by means likely to produce great bodily injury, each a felony, is guilty of burglary. [¶] The essence of a burglary is entering such a place with such specific intent, and the crime of burglary is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out."

Defendant asserts that CALJIC instruction No. 14.50 is so ambiguously worded that a jury could interpret the instruction as not requiring a specific intent to commit the offense of an assault by means likely to produce great bodily injury, but only a specific intent to steal. Defendant asserts that this ambiguity in CALJIC instruction No. 14.50 is not cured by the fact that the trial court also gave CALJIC instruction No. 14.59, which reads: "If you agree unanimously that defendant made an entry with the specific intent to steal or to commit an assault by means likely to produce great bodily injury, a felony, you should find the defendant guilty, and you are not required to agree on which particular crime the defendant intended to commit when he entered."

There is ambiguity in CALJIC instruction No. 14.50, which could lead to the inference suggested by defendant. This instruction could also lead to an inference that the offense of assault by means of force is an ingredient of the offense of stealing and carrying away the personal property of another, since the specific intent to steal is stated to require the additional specific intent to deprive the owner permanently of his property *or* to commit an assault by means likely to produce great bodily injury. This language of CALJIC No. 14.50 is reasonably capable of being interpreted to the effect that the specific intent to commit the felony assault offense is an alternative to the specific intent to deprive the owner permanently of his property, rather than an alternative to the specific intent to steal.

To eliminate the ambiguity inherent in CALJIC instruction No. 14.50, a third mention of "specific intent" should be inserted immediately prior to the description of the felony offense alternative to larceny, whether it be assault by means of force likely to produce great bodily injury, charged in the instant case, or some other felony as the alternative to the larceny felony.

Although CALJIC instruction No. 14.59, given in the case at bench, makes it clear that there must be either a specific intent to steal or a specific intent to commit an assault by means likely to produce great bodily injury for the burglary to be committed, the case is left with inconsistent instructions. Whether the jury would consider CALJIC instruction No. 14.59 as taking precedence over CALJIC instruction No. 14.50 in eliminating the ambiguity which exists in CALJIC No. 14.50 is a matter of pure speculation.

Defendant contends that the trial court, *sua sponte*, should have given CALJIC instruction No. 3.31 that requires a finding that there must exist a concurrence of the act part of the crime of burglary and the specific intent involved. In a crime such as burglary that requires a specific intent, it is essential that the court give an instruction "defining the required concomitant *intent*." (*People* v. *Ford* (1964) 60 Cal.2d 772, 792 [36 Cal.Rptr. 620, 388 P.2d 892].) (Italics in original.) But there is no requirement that the concurrence-of-act-and-intent instruction be phrased in any particular way. Here CALJIC instructions No. 14.50 and No. 14.59 made it clear that the requisite specific intent to steal or to commit an assault by means likely to produce great bodily injury had to exist at the moment of defendant's entry into Eva's apartment in order for the offense of burglary to have been committed.

But even if we were to hold that CALJIC instructions No. 14.50 and No. 14.59 were not adequate substitutes for an instruction on the concurrence of act and intent as is set forth in CALJIC No. 3.31, the error would not be fatal. The evidence in the instant case was such that there was no room for a finding that the requisite specific intent to steal or to commit an assault by means of force likely to produce great bodily injury could have been formed *after* defendant's entry into Eva's apartment. Under the evidence, whatever intent defendant entertained existed at the time of entry into the apartment or not at all. Under the circumstances, had CALJIC instruction No. 3.31 been given, it is not reasonably probable that a different result would have been reached by the jury. (*People* v. *Turner* (1971) 22 Cal.App.3d 174 [99 Cal.Rptr. 186].)

The failure to give CALJIC instruction No. 3.31 was therefore not prejudicial. (*People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

■ Defendant advances the contention that CALJIC instruction No. 14.59 is itself an invalid instruction. This instruction, as given in the case at bench, provides: "If you agree unanimously that defendant made an entry with the specific intent to steal or to commit an assault by means likely to produce great bodily injury, a felony, you should find the defendant guilty, and you are not required to agree on which particular crime the defendant intended to commit when he entered."

Defendant's assertion of error is that all 12 jurors are not required to agree on which specific intent defendant possessed upon entry into Eva's apartment—the intent to steal or the intent to commit an assault by means of force likely to produce great bodily injury. Defendant argues that all twelve jurors ought to be required to agree on a finding of one specific intent for burglary in order for guilt to be established. The decisional law has rejected this approach.

In *People* v. *Failla* (1966) 64 Cal.2d 560 [51 Cal.Rptr. 103, 414 P.2d 39], the court established the rule of law contrary to defendant's contention. "It follows that in prosecutions for burglary, as in murder and theft cases, the jurors need not be instructed that to return a verdict of guilty they must all agree on the specific 'theory' of the entry—i.e., what particular felony or felonies the defendant intended at the time—provided they are told they must be unanimous in finding that a felonious entry took place." (*Id.* at p. 569.)

In *People* v. *Milan* (1973) 9 Cal.3d 185 [107 Cal.Rptr. 68, 507 P.2d 956], the issue was again dealt with by our high court in connection with a prosecution for first degree murder in which the prosecution relied upon several different theories to obtain a conviction. The *Milan* court stated that it was not persuaded to depart from the rule established by prior decisions and pointed to the fact that in *People* v. *Nye* (1965) 63 Cal.2d 166 [45 Cal.Rptr. 328, 403 P.2d 736], the court had reaffirmed the holding in *People* v. *Chavez* (1951) 37 Cal.2d 656 [234 P.2d 632], "that in a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of first degree murder as that offense is defined by the

statute. [Citation.] A similar rule has been applied in the burglary cases [citing *Failla, supra,* 64 Cal.2d 560] and theft cases [citations]." (*Milan, supra,* 9 Cal.3d 185, 195.)

The effect of the rule of law announced in *Failla* and set forth in CALJIC No. 14.59 is that defendant in the instant case could have been found guilty if six of the jurors agreed that defendant had the intent to steal while the remaining six found that he had an intent to commit an assault by means likely to produce great bodily injury. The principle announced is that as long as *each* of the twelve jurors finds that defendant had the specific intent to commit either of the two crimes mentioned, it is immaterial as to the division of the jurors between the two intended crimes. However, CALJIC No. 14.59 is clear in its exposition that it does not permit a conviction if one or more jurors determines that defendant had neither specific intent when he made his entry into the victim's apartment.

### III

### The Failure To Instruct on the Meaning of an Assault by Means of Force Likely To Produce Great Bodily Injury

██ Although the trial court gave CALJIC instruction No. 14.50 that defines the offense of burglary, including the specific elements of the offense of larceny or theft as a component of the crime of burglary, no instruction was given to define the elements of the crime of an assault by means of force likely to produce great bodily injury, a felony, proscribed by Penal Code section 245, subdivision (a). It is to be noted that the information and CALJIC instructions No. 14.50 and No. 14.59, given by the trial court, used the phrase "means likely to produce great bodily injury" rather than the phrase "means *of force* likely to produce great bodily injury" which is the language contained in Penal Code section 245, subdivision (a). The failure of the trial court to give an instruction defining this felony is reversible error, even though defense counsel did not request such an instruction.

██ Whether requested or not, a trial court is required to give instructions on the legal principles that are relevant to the issues in a criminal action. "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] ██ The

general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) ▮ In *People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892], the court emphasized "the principle that it is the trial court's duty 'to see to it that the jury are adequately informed on the law governing all elements of the case submitted to them to an extent necessary. to enable them to perform their function in conformity to the applicable law.' "

It is this principle of law which necessitates the giving of instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offenses were present, including the obligation to instruct on a lesser included offense, even when, as a matter of trial tactics, a defendant may express objection to such an instruction being given. (*People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913].)

▮ In *Failla,* the court indicated that in a burglary case, the court *must* instruct the jury, on its own motion, "which acts the defendant, upon entry, may have intended to commit would amount to felonies." (*Failla, supra,* 64 Cal.2d 560, 564.) "Failure to do so is error, for it allows the triers of fact to indulge in unguided speculation as to what kinds of criminal conduct are serious enough to warrant punishment as felonies and incorporation into the burglary statute." (*Id.* at p. 564.)

Here there was no instruction given by the court defining the offense of "assault," set forth in Penal Code section 240, or the felony offense set forth in Penal Code section 245—"an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury." CALJIC instructions Nos. 9.00[1] and 9.02[2]

---

[1]CALJIC instruction No. 9.00 (rev. 1971) provides: "An assault is an unlawful attempt, coupled with a present ability, to commit a wrongful act by means of physical force upon the person of another. [¶] To constitute an assault, it is not necessary that any actual injury be inflicted, but if an injury is inflicted, it may be considered in connection with other evidence in determining whether an assault was committed [and, if so, the nature of the assault]."

[2]CALJIC instruction No. 9.02 provides: "Every person who commits an assault upon the person of another by any means of force likely to produce great bodily injury is guilty of a crime. [¶] To constitute that crime the assault must be committed by a means which is used in such a manner and with such force that it would be likely to produce great bodily injury. [¶] Actual bodily injury is not a necessary element of the crime, but, if such injury is inflicted, its nature and extent are to be considered in connection with all

are designed (1) for the case in which a defendant is charged with the felony offense of assault by means of force likely to produce great bodily injury, or (2) for the case in which such felony is the felony alleged to be the offense intended to be committed by defendant as part of a burglary charge.

The People contend that an instruction in the language of the burglary statute is sufficient. But the *Failla* court stated that this "rule is always subject to the qualification that ' "An instruction in the language of a statute is proper only if the jury would have no difficulty in understanding the statute without guidance from the court." ' [Citation.]" (*Failla, supra,* 64 Cal.2d 560, 565.) ■■■ "As a general rule, ordinary words do not require definition; they are presumed to be understood by the jurors." (*People* v. *Jones* (1971) 19 Cal.App.3d 437, 447 [96 Cal.Rptr. 795].) ■■■ But in the case at bench, the intent elements of the burglary crime charged—the intent to commit "an assault" (Pen. Code, § 240) and "an assault . . . by any means of force likely to produce great bodily injury" (Pen. Code, § 245)—are not ordinary words that do not require definition.

In the case at bench, one aspect of the burglary charged against defendant is that he entered Eva's apartment with the intent to commit an assault by means likely to produce great bodily injury. The principle set forth in *St. Martin, Ford* and *Failla* becomes applicable, since the jury was called upon to determine whether the evidence established all of the elements required for defendant to have had an intent to commit the felony offense of an assault by means of force likely to produce great bodily injury as set forth in Penal Code section 245. Unless an instruction is given defining what is meant by "an assault" and what is meant by "an assault by means of force likely to produce great bodily injury," the trial court has not complied with the rule of law set forth in *St. Martin, Ford* and *Failla* that *all applicable* principles of law must be stated to the jury in order for the jury to properly determine the issues presented by the information and the evidence introduced at the trial.

In the case before us, the failure of the trial court, of its own volition, to give an instruction defining the felony offense of "assault by means of force likely to produce great bodily injury" is fatal to the validity of defendant's conviction and constitutes reversible error. There is no way for us to tell what the jury understood or found to be true in arriving at

the evidence in determining whether the means used and the manner in which it was used were such that they were likely to produce great bodily injury."

its verdict. The jury may have decided that, upon defendant's entry into Eva's apartment, his intent was to steal, but it may have concocted its own definition of the assault-by-means-of-force felony and convicted defendant for having an intent to commit acts constituting a misdemeanor or to commit acts amounting to no crime at all.

This is the teaching of *Failla.* ██ "[W]here the evidence permits an inference that the defendant at the time of entry intended to commit one or more felonies and also an inference that his intent was merely to commit one or more misdemeanors or acts not punishable as crimes, the court must define 'felony' and *must* instruct the jury which acts, among those which the jury could infer the defendant intended to commit, amount to felonies. Failure to do so is error, for it allows the triers of fact to indulge in unguided speculation as to what kinds of criminal conduct are serious enough to warrant punishment as felonies and incorporation into the burglary statute." (*Failla, supra,* 64 Cal.2d 560, 564.) (Italics added.)

The judgment is reversed.

Kingsley, J., concurred.

**FILES, P. J.,** Dissenting.—I would affirm the judgment. In my view the instructions given were intelligible and adequate for this case. I find no miscarriage of justice. (See Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Respondent's petition for a hearing by the Supreme Court was denied May 11, 1978. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.