Filed 2/11/14  P. v. Swick CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT SWICK,<br><br>    Defendant and Appellant. | B244225<br><br>(Los Angeles County<br>Super. Ct. No. PA069022) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Beverly Reid O'Connell, Judge.  Affirmed.

Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Robert Swick appeals from a judgment of conviction entered after a court trial. The case involved a residential burglary, witnessed by one of the victims. The primary issue at trial was whether Swick had the requisite criminal intent to commit burglary. The trial court found Swick guilty of first degree burglary with a person present (Pen. Code, §§ 459, 667.5, subd. (c)(21)) and found true two prior conviction allegations within the meaning of the "Three Strikes" law (*id*., §§ 667, subds. (b)-(i), 1170.12). After granting Swick's motion to dismiss one of the prior strike convictions (*id*., § 1385; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), the court sentenced Swick to an aggregate state prison term of eight years, consisting of the middle term of four years doubled as a second strike under the three strikes law.

On appeal, Swick challenges the sufficiency of the evidence to support his conviction, arguing that at the time of the offense he was legally unconscious due to voluntary alcohol intoxication. We affirm the judgment.

## FACTS

On the night of November 28, 2010 Ishmael Guzman and his wife were sitting in their living room watching television. Shortly after 9:00 p.m. Guzman noticed movement outside in his enclosed back patio, which was adjacent to his kitchen. Guzman saw Swick open the sliding glass door, step inside the patio, and approach a table on which rested numerous decorative items belonging to Guzman's wife. A porch light illuminated Swick. Swick appeared to pick up one of the items and examine it. Guzman yelled at Swick, walked through the kitchen, and stood inside the closed door to the patio. Swick said nothing in response and made no gestures; he had a blank expression on his face. After several seconds, Swick looked up and noticed Guzman standing behind the kitchen

door. Swick turned and left the patio, closing the sliding glass door and taking the decorative item with him.[1]

Edgar Huerta and Jesus Estrada lived next door to each other and approximately 300 yards from Guzman's house. At approximately 9:00 or 9:30 p.m. on November 28, 2010, Huerta was watching television and heard someone shaking his back door. Huerta went out the front door and saw Swick advancing through the walkway between his house and Estrada's house. Huerta called to Swick and demanded to know what he was doing on his property. Huerta noticed that Swick was barefoot and bloody. There was a broken beer bottle and some blood on the ground. Swick turned, looked at Huerta, and continued walking. Huerta called to Swick again and started to approach him. In response, Swick ran from the yard and fled up the street.

After Huerta telephoned him, Estrada checked his backyard and found two broken beer bottles on the ground near his backyard refrigerator where he kept beer. There was blood and pieces of glass on the ground. Huerta pointed Swick out to Estrada, who caught up with Swick and asked whether he had been in his yard. Swick said, "No," and claimed Estrada had the wrong person. Estrada testified that it appeared to him that Swick had no problem understanding what Estrada was saying. Estrada then flagged down a passing patrol car.[2]

Los Angeles Police Officer Jean Lamas responded to a report of a residential burglary and learned that fellow officers had detained Swick and recovered two beer bottles from his shorts. Lamas conducted a field show-up at which Guzman identified Swick as the burglary suspect.

---

[1]     Guzman testified Swick left with the item he had removed from the table, although Guzman could not identify any specific item that was missing from his wife's collection.

[2]     The trial court admitted the evidence of these incidents and Swick's two prior burglary convictions pursuant to Evidence Code section 1101, subdivision (b), to establish Swick's specific intent to commit the burglary of the Guzman residence.

While speaking to Swick at the scene, Officer Lamas noticed Swick's speech was slurred, and he appeared slightly intoxicated. Swick, however, was standing on his own and seemed to understand Lamas' questions and answered them "without delay." Because Swick's head, knees, and foot had fresh cuts and scrapes, Lamas asked if Swick needed an ambulance. Swick responded, "No, I am fine." Swick later told the officer he had fallen.

At trial, Swick's girlfriend, Najat Bashout, testified that she had seen Swick drunk approximately ten times prior to January 2010, but she never saw Swick consume alcohol between January and November 27, 2010. On November 27, 2010, however, Bashout smelled alcohol on Swick's breath during dinner. The next morning, the day of the burglary, Bashout saw Swick in front of his sober-living home. He was not wearing shoes and looked raggedy. At approximately 5:00 that evening, Bashout went into Swick's room. Swick appeared to have been drinking and had passed out. Bashout found a half-empty bottle of liquor under his blanket and realized he had urinated on himself. After some effort, Bashout awakened Swick, but he went back to sleep. The following day she learned Swick had been arrested.

Swick testified that he was an alcoholic and that alcohol had been a factor in his 1994 and 1999 residential burglaries and his 1986 violation of probation. Swick could not recall the underlying events of his residential burglaries and probation violation. According to Swick, following a near-fatal motorcycle accident in 1984, he began suffering from intermittent seizures, which would cause him to "blackout" and become unable to remember where he was or what he was doing at the time. Swick also suffered from blackouts induced by alcohol consumption.

Swick testified that he began drinking again on November 25, 2010 after several months of sobriety. He continued drinking on November 27 and 28, 2010. His last memory of November 28, 2010 was drinking a half pint of brandy at around 9:00 in the morning. Swick had no recollection of seeing Bashout or of any other events that day. Swick's first memory after consuming the brandy was of awakening in a jail cell on November 29, 2010, barefoot and wearing shorts and a torn shirt. Swick was "shocked,"

4

and estimated he had suffered a complete blackout for 18 to 24 hours, which could have been caused by alcohol consumption or a seizure.

## DISCUSSION

### A. *Standard of Review*

In evaluating whether there is sufficient evidence to support a conviction, "'"we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]"  [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.  [Citation.]'"  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  "The same standard of review applies in cases . . . where the prosecution relies primarily on circumstantial evidence."  (*People v. Williams* (2013) 218 Cal.App.4th 1038, 1053.)

5

B.  *The Finding Swick Committed Burglary Is Supported by Substantial Evidence*

The crime of burglary is committed when a person "enters any . . . building," including a "house," "with intent to commit . . . larceny or any felony." (Pen. Code, § 459.)  The specific intent to commit a felony or theft must exist at the time of the entry. (*People v. Riel* (2000) 22 Cal.4th 1153, 1204; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540 ["[i]n order to constitute burglary, the defendant must intend to commit the theft or felony at the time of entry"].)  The intent required for burglary "is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime." (*People v. Lewis* (2001) 25 Cal.4th 610, 643; see *People v. Carter* (2005) 36 Cal.4th 1114, 1157 ["[w]ith regard to the offense of burglary . . . defendant's intent instead may be inferred from all of the facts and circumstances disclosed by the evidence"]; *People v. Holt* (1997) 15 Cal.4th 619, 699 [evidence of intent is usually circumstantial and must support a reasonable inference of the requisite state of mind in order to support a conviction of burglary].)  Evidence of "theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry." (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741.)

There is ample circumstantial evidence that Swick had the specific intent to commit theft when he entered the Guzmans' patio.  Indeed, "'[b]urglarious intent can reasonably be inferred from an unlawful entry alone.'" (*People v. Martin* (1969) 275 Cal.App.2d 334, 339; accord, *People v. Hinson* (1969) 269 Cal.App.2d 573, 578; *People v. Wolfe* (1967) 257 Cal.App.2d 420, 425; *People v. Stewart* (1952) 113 Cal.App.2d 687, 691.)  The fact that Swick in fact took an item from the Guzmans' home further supports a finding of intent to commit theft. (See *People v. Abilez* (2007) 41 Cal.4th 472, 508 ["'[t]here is no better proof that [defendant] entered the [victim's house] with intent to commit robbery than a showing he did in fact commit robbery after his entry'"].)  Moreover, Swick left the residence once he knew Guzman was watching him, which supports the reasonable inference Swick was aware of the culpability of his conduct.

6

(See *People v. Frye* (1985) 166 Cal.App.3d 941, 947 [the defendant's "sudden flight" upon being discovered in a vacant house supported an inference that the defendant entered the house with the intent to steal]; *People v. Smith* (1978) 78 Cal.App.3d 698, 704 ["'an intent to commit theft at the time of entry may be inferred from flight from the premises'"].) In addition, Swick's theft of beers from Estrada's backyard, which he later denied, and his attempt to enter Huerta's residence before fleeing, was further evidence of his intent. The trial court was entitled to infer an intent to commit theft for a burglary conviction from evidence of nonconsensual entry, flight from the scene, and failure to provide a plausible reason for being on the premises. (See *People v. Martin*, *supra*, 275 Cal.App.2d at p. 339; *People v. Jordan* (1962) 204 Cal.App.2d 782, 786-787.)

Swick argues that he did not have the requisite intent for burglary because he was unconscious at the time due to voluntary intoxication. "Unconsciousness, if not induced by voluntary intoxication, is a complete defense to a criminal charge. ([Pen. Code,] § 26 . . . .) To constitute a defense, unconsciousness need not rise to the level of coma or inability to walk or perform manual movements; it can exist 'where the subject physically acts but is not, at the time, conscious of acting.'" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 417.) By contrast, unconsciousness due to voluntary intoxication is not a complete defense because of the defendant's culpability in becoming intoxicated, although it may negate the specific intent required for a particular crime. (*People v. Hughes* (2002) 27 Cal.4th 287, 343-344; see *People v. Atkins* (2001) 25 Cal.4th 76, 81-82 [voluntary intoxication is "relevant to negate the existence of a specific intent, but not a general intent"].)

There is little support in the record for Swick's theory that he did not consciously intend to commit burglary, but instead just awakened in jail with no memory of what he had done after consuming alcohol. There was evidence that Swick was either intoxicated or had been drinking at the time of the burglary. But there was no expert testimony, medical records, or other relevant evidence to substantiate Swick's claim that the consumption of alcohol could or did render him unconscious or that he was suffering a blackout when he entered the Guzman residence. The sole evidence of Swick's

7

purported unconsciousness due to voluntary intoxication was his testimony, which the trial court was free to disbelieve (*People v. Zamudio, supra,* 43 Cal.4th at p. 357) and which we do not reweigh. (See *People v. Albillar* (2010) 51 Cal.4th 47, 60 ["'reviewing court neither reweighs [the] evidence nor reevaluates a witness's credibility'"].)

## DISPOSITION

The judgment is affirmed.

SEGAL, J.*

We concur:

WOODS, Acting P. J.

ZELON, J.

---

\*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.