Filed 6/8/23 P. v. Anderson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079027 |
| v. | (Super. Ct. No. FWV21003849) |
| BROQUE ANDERSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Daniel W. Detienne, Judge. Affirmed.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

A jury found defendant and appellant Broque Anderson guilty of two counts of second degree burglary (Pen. Code, § 459). The trial court sentenced defendant to two years, eight months in prison with credit for time served. Defendant's sole contention on appeal is that there is insufficient evidence to support his intent to commit one of the burglaries. We disagree and affirm the judgment.

# II.

## FACTUAL BACKGROUND

### A. *Burglary of PBK Architectural Firm*

On October 6, 2021, between the hours of 2:30 a.m. and 3:30 a.m., a representative of PBK Architectural Firm (PBK) received a burglar security alarm notification from its security company. The representative watched a live feed of the security video footage on her phone and saw defendant walking through offices with a bag in his hands. These offices remained locked throughout the day, were not open to visitors at any time, and employees used a key fob system to get in. One of PBK's employees saw defendant exit the office building shortly after 7:00 a.m. The security footage showed defendant carrying something in his hands as he exited the building. Security footage also showed defendant inside PBK's offices in the middle of the night on October 2 and 3, 2021 between 2:00 a.m. and 7:00 a.m. carrying bags in his hands.

A San Bernardino County Deputy Sheriff arrived at PBK shortly after 7:00 a.m. but did not find defendant. The deputy spoke with three PBK employees and also viewed the surveillance video. The deputy observed fresh and dirt free scratches on the inside of the entry doors around the locking mechanism. The deputy found a tote bag and a black computer bag containing property belonging to defendant inside PBK's building.

Three hours after the deputy was called to PBK, the same deputy recognized defendant from the surveillance video sitting handcuffed in the back of a police vehicle at the sheriff's station. The deputy contacted defendant and searched a small, black cloth bag that was next to him. In the bag, the deputy found a set of keys with a key fob on it, a tablet, and a computer bag, all of which the employee kept in different locations within PBK offices. The PBK employee noted that another key fob had gone missing earlier that week. The deputy also found a homemade tool made out of Velcro straps and office supplies that looked like it could pry open a door inside defendant's black bag.

B. *Burglary of Sola Salon*

While released on his own recognizance pending trial for the PBK burglary, defendant committed a second burglary on October 25, 2021. On that day, defendant entered Sola Salon in the early morning hours before any of the salon's employees arrived. The salon's manager found defendant on the balcony of the salon where defendant had locked himself out. The manager immediately called law enforcement. Defendant was holding an iced tea he had taken from the salon's refrigerator. The

3

salon's security footage showed that defendant had entered with a metal burglary tool that he had left on top of the salon's refrigerator.

C. *Defendant's Defense*

Defendant testified on his own behalf. He admitted that he was convicted of vandalism in 2018, and that he was convicted of three felony charges in 2016 for identity theft and possession of counterfeit items. Defendant acknowledged that it was him in the security footage from PBK on October 2 through 6, 2021. He explained that he had gone into PBK's offices to recover his property and to use PBK's conference rooms and library to work on "map data." He also claimed that he was at PBK to meet a friend and his friend's mother who worked at PBK, and that he was in contact with another employee named Lisa, who knew about his meeting with the other two people. Defendant, however, admitted that he did not actually meet up with anyone at PBK.

Regarding the items found in his bag, he claimed that he used the Velcro straps for "the charges to electrical devices" he owned and that at "various times" he left his laptops and laptop bag at PBK offices. He had also left a shirt or two and a jacket in the building because he felt these items would be safe to leave there while he was out running errands. He testified that he did not intend to take the employee's property and only did so because her property resembled his tablet. He admitted to taking a key fob from a conference table at PBK.

As to his arrest after the PBK burglary, defendant stated that "the police . . . had already made the arrest for me being there" and "they released me with the property and I

4

brought the property back there. When I got arrested again." Defendant claimed that he went to the police station on October 6, 2021 because his property was mixed up with the PBK employee's belongings. He explained that he had a bag with two laptops and a tablet and was arrested after he was trying to get his laptops back from the PBK office. He also stated that "they took the property – when they removed me from the building the date I was there with the CEO, they took my property out – well they left my property there and took me out."

As to the Sola Salon burglary, defendant testified that he had plans to meet an employee named Paula at the salon and claimed Paula was outside when he went inside. He also asserted that he either used a key to enter the salon or was buzzed in, but he could not recall who gave him the key. Defendant initially stated that the iced tea he took could have been his because he brought "iced tea and monster to that fridge throughout the year," but later admitted that it was not his. Defendant claimed that the metal instrument found on top of the refrigerator was just a piece of metal he had found and picked up. He denied using that metal instrument to get into the salon. Defendant denied entering the salon or PBK to commit theft or any other crime.

## III.

## DISCUSSION

Defendant does not dispute that he was the person who broke into PBK. Instead, he argues that the evidence is insufficient to prove he entered with the intent to steal and thus his conviction on count 1 should be reversed. We disagree.

5

In considering a challenge to the sufficiency of the evidence to support a judgment of conviction, we review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is reasonable, credible, and of solid value, from which a rational jury could find the elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Manibusan* (2013) 58 Cal.4th 40, 87; *People v. Wilson* (2020) 56 Cal.App.5th 128, 153.) We focus "'on the *whole* record . . . , rather than on "'isolated bits of evidence.'"'" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.) Reversal is required only if "'it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Nonetheless, "a reasonable inference from the evidence ""may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence."'" (*People v. Sanford* (2017) 11 Cal.App.5th 84, 91-92.)

"'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever

6

is there sufficient substantial evidence to support'" the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The same standard applies when the conviction rests primarily on circumstantial evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

In order to be convicted of second degree burglary, the People have to prove beyond a reasonable doubt that defendant entered a commercial business building with the intent to steal or commit a felony. (§ 459.) The requisite intent must exist at the time of entry (*People v. Hill* (1967) 67 Cal.2d 105, 119), and will usually be inferred from circumstantial evidence. (*People v. Matson* (1974) 13 Cal.3d 35, 41.) "Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal." (*People v. Nunley* (1985) 168 Cal.App.3d 225, 232.)

"[T]he intent required for robbery . . . is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime." (*People v. Abilez* (2007) 41 Cal.4th 472, 506-507; accord, *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245; *People v. Moody* (1976) 59 Cal.App.3d 357, 363.) Many cases have held that evidence of surreptitious entry, flight upon confrontation, and failure to provide a reason for being on the premises constitute sufficient evidence from which a jury or finder of fact may infer the intent to commit theft sufficient for conviction of burglary. (*People v. Matson*, *supra*, 13 Cal.3d at pp. 41-42 [Supreme Court concluded

there was sufficient evidence to support a burglary conviction based on the circumstances that the defendant entered the victim's apartment surreptitiously, hid in her bathroom with the lights out, and denied having done so]; *People v. Martin* (1969) 275 Cal.App.2d 334, 339 [Flight from the scene of a burglary, without reasonable explanation, is evidence from which intent may be inferred.]; *People v. Frye* (1985) 166 Cal.App.3d 941, 947 [codefendant made an unauthorized entry into a vacant home at 1:00 a.m. and ran out the back door after a police officer yelled, "'[F]reeze'"; the "late hour and sudden flight upon discovery support the inference [he] entered with intent to steal"]; *People v. Lopez* (1967) 249 Cal.App.2d 93, 98; *People v. Smith* (1978) 78 Cal.App.3d 698, 704 [an intent to commit theft at the time of entry may be inferred from flight from the premises].) Indeed, "[b]urglarious intent [can] be reasonably and justifiably inferred from the unlawful and forcible entry alone." (*People v. Michaels* (1961) 193 Cal.App.2d 194, 199; see *People v. Martin*, *supra*, at p. 339; *People v. Stewart* (1952) 113 Cal.App.2d 687, 690-691; *People v. Walters* (1967) 249 Cal.App.2d 547, 551 [felonious intent to commit theft may be inferred from the unlawful entry alone].) Evidence such as theft of property from a dwelling may also create a reasonable inference that there was intent to commit theft at the time of entry. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; *People v. Lewis* (2001) 25 Cal.4th 610, 643; *People v. Price* (1991) 1 Cal.4th 324, 462.) Such intent may also be inferred where the defendant is a stranger and enters a building at a late hour, without permission, and without announcing his intent and is found with instruments commonly used by burglars. (*People v. Swenson* (1938) 28 Cal.App.2d 636,

8

639-640; *People v. Osegueda* (1984) 163 Cal.App.3d Supp. 25, 27-30.) A defendant's possession of recently stolen property is another circumstance that shows intent to steal. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 709.)

Here, the totality of the facts and circumstances shows that defendant entered PBK on October 6, 2021 with the intent to steal. The entry by defendant occurred late at night around 2:00 a.m. after the business was closed. The entry was intentional and forcible, using a burglary tool. Defendant fled with a black bag in his hand while the building's alarm was blaring and prior to law enforcement arrival. And after defendant was arrested, he was found in possession of the black bag containing property belonging to a PBK employee. The black bag contained a set of keys with a key fob, a tablet, and a computer bag, all of which the employee kept in different locations within PBK offices. Defendant's black bag also contained a homemade tool made out of Velcro straps and office supplies that looked like it could pry open a door. Further, there was no evidence to suggest defendant was known as a customer of the business. In the absence of any plausible explanation to the contrary, the most reasonable explanation from these facts is that defendant broke into the structure with the intent to steal.

Defendant contends that the facts in the case are unusual to support a finding that he entered PBK with the intent to steal. He points to the unusual nature of his activities at the PBK building, such as spending hours in the building over the course of at least three days, "where dozens of laptops and tablets were easily accessible, before eventually exiting with a single black bag and leaving behind two black bags of his own—makes it

9

'just as reasonable to infer' that [his] intent arose after his entry rather than contemporaneous to it." He also points to the fact that he did not take more items, did not make a quick exit from PBK, and the fact that he subsequently brought the items he took to the police station. These arguments do not support his position that there was insufficient evidence of his intent to steal. Rather, these contentions go to the weight and credibility of the evidence presented at trial. ""'We do not reweigh evidence or reevaluate a witness's credibility."'" (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) The jury likely rejected defendant's testimony that he did not enter PBK with the intent to steal.

Defendant's reliance on *People v. Jones* (1992) 184 A.D.2d 383, a New York case, is misplaced. First, out-of-state authorities are not binding on California courts. (*People v. Montes* (2014) 58 Cal.4th 809, 884.) Second, *Jones* is distinguishable because unlike that case, here defendant did not lawfully enter the PBK building, and there was no legitimate explanation for defendant entering PBK. In *Jones*, the defendant lawfully entered a rooming house looking for his uncle, and after not finding him, he went to another part of the building and cut hoses inside several bathrooms causing water to leak. (*People v. Jones*, *supra*, at p. 383.) The appellate court found there was insufficient evidence the defendant had entered the building with an intent to commit a crime because his uncle did live in the building, he had several other acquaintances whom he often visited there, and the prosecution offered no proof as to the time or circumstances of defendant's entry. (*Id*. at p. 384)

Defendant's reliance on *In re Leanna W.*, *supra*, 120 Cal.App.4th 735, is also misplaced. There, the minor was present at her grandmother's house during an unauthorized party involving 30 to 40 people where the grandmother's alcohol was consumed and her items were missing. (*Id*. at p. 740.) Because there was a complete absence of evidence that the minor participated in any kind of burglary or vandalism or even knew burglary or vandalism was taking place in the home and any one of the numerous people present at the home could have burglarized or vandalized the home, the Court of Appeal found insufficient evidence to support the juvenile court's finding the minor committed first degree burglary and vandalism. (*Id*. at pp. 740-741, 743.) The court explained, "The mere possibility that [the minor] consumed the alcohol raises nothing more than a suspicion, which does not form a sufficient basis for an inference of fact." (*Id*. at p. 741.)

Here, the People's evidence of defendant's intent is not sheer speculation. Unlike the circumstances of *Leanna W.*, defendant was the only person seen at PBK offices during the hours of 2:00 a.m. and 7:00 a.m. at the time of the burglary. PBK employees identified defendant as the only person who entered the building without permission during late hours. Besides his self-serving statements, there was no evidence of any relationship or acquaintance between defendant and any of the employees at PBK. There was no suggestion of any legitimate reason for defendant to be inside the PBK building. Defendant entered the building without permission using a burglary tool. He was seen on video surveillance walking through offices holding a black bag. He had no reasonable

11

legitimate explanation to be in the building.  And he was found in possession of items he had taken from a PBK employee, as well as burglary tools at the time of his arrest.  There is substantial evidence that defendant entered PBK with the intent to steal.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

12