Filed 1/13/15  P. v. Cervantes CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DANIEL CERVANTES,<br><br>Defendant and Appellant. | F066466<br><br>(Super. Ct. No. BF142020A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Robert S. Tafoya, Judge.

Richard Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Daniel Cervantes was convicted by jury of first degree residential burglary (Pen. Code,[1] §§ 459, 460, subd. (a)), and receiving stolen property (§ 496, subd.

---

[1]Further statutory references are to the Penal Code unless otherwise indicated.

(a)) after a trial by jury.  The jury acquitted defendant of exhibiting a deadly weapon (§ 417, subd. (a)(1)).  In a bifurcated court trial, the court found true defendant's prior conviction for a serious or violent felony (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)).  The trial court sentenced defendant to a total term of eight years in prison.

On appeal, defendant contends (1) the evidence was insufficient to support his convictions; (2) the trial court erred in failing to define the term "theft" as used in the burglary instruction; (3) his trial counsel was ineffective for describing his prior conviction as one of "terrorist threats" to the jury; and (4) the trial court abused its discretion in ordering $1,299 in restitution to the victim.  We find no error and affirm.

## FACTS

After attending a party with his family, Ralph Zepeda returned to his home sometime in the evening hours.  Zepeda explained when he and his family left the home earlier that evening, his gate was closed and a window-mounted air conditioning unit was properly affixed to a back window.  Upon returning home, Zepeda went to the front door and unlocked it then returned to his vehicle to unload some items.  At that point, Zepeda noticed his gate was open and the air conditioning unit had been removed and placed on the ground.  In addition, his 42-inch flat screen television set, which had previously been located inside the home, was now sitting on the ground by the window that was open.  He also observed two people, whom he later identified as defendant and his teenage brother M., run from his property.  Initially, he only noticed defendant running from the home, but as he chased after him, he also noticed M. was running from the home as well.  During the chase, defendant stopped running and Zepeda passed him, continuing  after M.

As Zepeda gave chase, he noticed M. appeared to be holding something in his pocket.  M. eventually stopped and Zepeda caught up with him.  Once M. stopped, Zepeda confronted him about the situation.  He denied assaulting M. in any way.  Meanwhile, defendant approached and began yelling something to the effect of "what you going to do now" and brandishing a small knife with a three-inch blade.  Defendant

2.

was holding the knife up, pointing it toward him. When Zepeda noticed defendant holding the knife, he stepped back and then ran home.

Zepeda explained he knew defendant and M. from the neighborhood and had known them for 10 years. M. and Zepeda's 13-year-old son are friends. Zepeda testified he had not given anyone permission to enter his home or take his property.

Upon returning home, Zepeda noticed several items missing from his home, including a PlayStation, video games, and clothing, including sports jerseys belonging to his children. After discovering the missing items, Zepeda called the police who responded a short time later.

Bakersfield police officer Chad Gross responded to the report of the burglary. After taking a report, he conducted an in-field identification where Zepeda identified M. as one of the perpetrators. Subsequently, Gross searched the residence shared by defendant and M. and found a PlayStation and some clothing that matched the description of the stolen property. The items, later identified by Zepeda as belonging to him, were located in the garage. Defendant was not present when Gross searched the home. Gross asked defendant's grandmother to contact him when defendant returned.

Approximately one and a half hours later, Gross recontacted defendant's grandmother and learned defendant had returned home. Gross and his partner went to the home and contacted defendant in his bedroom. After placing him in handcuffs and reading him his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, the officer questioned defendant about what had happened earlier. Defendant stated he did not know what the officers were talking about, became uncooperative, and refused to answer any more questions. Gross noted he did not recover any stolen property or a knife from defendant's room.

### Defense Case

Defendant testified in his own defense. On the day in question, he was living with his brother M. and his grandmother. Earlier that day his grandmother asked him to look for M. because she was worried about him. Defendant thought M. could be at Zepeda's

3.

home because he knew M. and Zepeda's son were good friends and were often together. Defendant walked by the home, but did not see M. there, so he began walking to another of M.'s friend's homes in the neighborhood. Defendant denied seeing Zepeda arrive home as he was out looking for M.

As he was walking around the area, he noticed someone run past him. Initially, defendant did not notice it was M., but then realized it was him. He yelled at M. to go home, and M. stopped running. He then noticed Zepeda approach and angrily grab M. by the neck. Defendant began to yell at Zepeda to let his brother go. He denied threatening Zepeda or brandishing a knife. Zepeda said M. had broken into his home and he was going to call the police. As Zepeda was yelling, M. ran off. Afterwards, defendant went home and told his grandmother what had happened. She asked him to continue looking for M., so defendant left again to look for him. Defendant acknowledged he did not tell the police any of this when they questioned him. He testified that when the police questioned him, he did not know what they were talking about.

## DISCUSSION

### I. Sufficient Evidence Supports the Convictions

Defendant contends the evidence was insufficient to support his convictions. Specifically, he argues there was no testimony or direct evidence establishing defendant went inside Zepeda's home, had the intent to steal upon his entry, or had possession of the stolen property. We find the evidence sufficient to support the convictions.

When a defendant challenges the sufficiency of the "evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.) Further, we review "the evidence in the light most favorable to the prosecution, [asking whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] This

4.

familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it." (*People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765.)

"Whether the evidence presented at trial is direct or circumstantial, … the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Towler* (1982) 31 Cal.3d 105, 118-119.)

> "'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]' [Citation.] "'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.'" [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

**A.      The Evidence Was Sufficient to Support the Burglary Conviction**

In order to establish the crime of burglary, the prosecution must prove, as relevant here, an unlawful entry into a residence with the intent to commit a larceny. (§§ 459, 460, subd. (a); *People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18; *People v. Montoya* (1994) 7 Cal.4th 1027, 1051.) The crime is complete upon entry into the defined structure with the larcenous intent, regardless of whether any theft takes place. (*People v. Montoya*, *supra*, at pp. 1051-1052.)

5.

Many cases have held that evidence of surreptitious entry, flight upon confrontation, and failure to provide a reason for being on the premises constitute sufficient evidence from which a finder of fact may infer the intent to commit theft sufficient for conviction of burglary. Indeed, "[b]urglarious intent [can] be reasonably and justifiably inferred from the unlawful and forcible entry alone." (*People v. Michaels* (1961) 193 Cal.App.2d 194, 199; see *People v. Martin* (1969) 275 Cal.App.2d 334, 339, *People v. Stewart* (1952) 113 Cal.App.2d 687, 690–691.)

Defendant contends the evidence was insufficient to conclude he entered Zepeda's home and that he did so with the requisite intent. Defendant's quarrel with the evidence appears to be that there was no direct evidence of his entry into the home. However, direct evidence of his entry was not required. It is elementary that the fact of the entry may be proven through circumstantial evidence, as was done here. (*People v. Conley* (1963) 220 Cal.App.2d 296, 299; *People v. Murphy* (1959) 173 Cal.App.2d 367, 373.)

The evidence established Zepeda saw defendant running from the area of his opened gate shortly after he returned home. Zepeda noted the gate was closed prior to his leaving earlier that day. In addition to the open gate, Zepeda observed his window-mounted air conditioning unit had been removed from the window and the window was open. His 42-inch flat screen television set, which was inside the home when he left only hours earlier, was now located on the ground just outside the now opened window and opened gate. These circumstances indicated someone removed his air conditioning unit and climbed into the home through the opened window. The fact defendant was seen running from the home, from the area near the opened window, while property that was previously inside was now outside by the window, strongly indicated defendant had entered the home and removed the television set and other property.

Defendant seems to argue there was no evidence he, rather than his brother, was the one who entered the home. Not so. Defendant's flight from the home coupled with the other circumstances outlined above provided evidence defendant participated in the entry of the home. Indeed, the facts of this case are quite similar to those of *People v.*

6.

*Martin*, *supra*, 275 Cal.App.2d 334. There, the police were dispatched to a report of a burglary in progress at a medical building. Upon their arrival, they discovered a smashed window with a hammer nearby. The interior of the office was in disarray, and a drug cabinet was opened. The officers began checking the surrounding area and, after hearing some noises coming from bushes at the rear of the building, saw two men running from the back of the building. The officers gave chase. During the pursuit, the defendant fell and was assisted to his feet by the other man. The defendant was ultimately apprehended. The defendant claimed he happened to be in the vicinity to visit a woman who lived nearby. He claimed he saw a man run from the office and that he also ran, but he denied being assisted by the other man. He denied any participation in the burglary. (*Id.* at p. 336.)

On appeal, the defendant claimed the evidence was insufficient to support his conviction because he was not seen entering or leaving the building. This court[2] affirmed the judgment, explaining the defendant's flight from the building shortly after police arrived on scene, in addition to his failure to adequately explain his presence and flight, provided sufficient evidence for the jury to infer he participated in the burglary. (*People v. Martin*, *supra*, 275 Cal.App.2d at p. 339.) Similarly here, defendant's presence near the apparent point of entry of the home, his immediate flight upon Zepeda's return home, the fact he confronted Zepeda when Zepeda approached M., his unsatisfactory explanation for his presence, and the fact the stolen property was recovered from his home all lead to the reasonable inference defendant had in fact entered Zepeda's home.

In addition, the facts were sufficient to demonstrate defendant's intent to steal upon his entry into the home. "Proof of intent is rarely susceptible of direct proof and may be inferred from the circumstances of the case." (*People v. Moody* (1976) 59 Cal.App.3d 357, 363.) "'Burglarious intent can reasonably be inferred from an unlawful

---

[2]Defendant asks this court to reconsider the opinion in *People v. Martin*. We decline his invitation.

7.

entry alone.'" (*People v. Martin*, *supra*, 275 Cal.App.2d at p. 339.) Circumstances such as flight upon discovery may also support an inference of felonious intent. (*Ibid.*) Here, there was obviously an entry and a subsequent theft. The fact defendant took items from the home after his entry is strong evidence he intended to steal upon entering the house. Indeed, under the facts of the case no other intent is readily apparent. Zepeda's home was burglarized while he was away. The apparent means of entry was the window from which the air conditioning unit had been removed. Notably, Zepeda testified that when he returned home, he unlocked the front door. No other evidence was presented that any other door or window to the home was unlocked or tampered with. Thus, it appeared the entry was, in fact, made through the window. Outside next to that open window, Zepeda found his 42-inch television set. It was reasonable for the jury to infer defendant and his brother removed the television from the home through that window. The circumstances surrounding the burglary—including the means of entry and where the property was located—all indicate defendant had the intent to commit a theft upon his entry. The fact a theft was completed only bolsters that finding. (*People v. Abilez* (2007) 41 Cal.4th 472, 508; see *People v. Du Bose* (1970) 10 Cal.App.3d 544, 551 ["There is no better proof that [defendant] entered the [building] with intent to commit robbery than a showing he did in fact commit robbery after his entry"].) Consequently, we conclude the evidence was sufficient to support the burglary charge.

**B.     The Evidence Was Sufficient to Support the Receiving Stolen Property Conviction**

In order to prove the crime of receiving stolen property, the prosecution must prove: (1) property was stolen, (2) the defendant knew the property was stolen, and (3) the defendant has possession of the stolen property. (*People v. Land* (1994) 30 Cal.App.4th 220, 223.) Defendant argues the evidence failed to establish he had possession of the property knowing it was stolen. We disagree.

As we have already explained, the evidence supported the jury's finding that defendant himself participated in the burglary. Having participated in its taking, the

8.

evidence was likewise sufficient to support the additional finding he also knew the property was stolen. There was also strong circumstantial evidence of defendant's possession of the property. The victim's property was found in the garage of the home he shared with his brother and grandmother. Possession of stolen property may be either actual or constructive, and there is no requirement that it be exclusive. (*People v. Land*, *supra*, 30 Cal.App.4th at p. 223.) While, as defendant asserts, mere presence near stolen property is insufficient in and of itself to support a conviction for receiving stolen property (*People v. Martin* (1973) 9 Cal.3d 687, 696), the record discloses significantly more evidence of defendant's possession.

Defendant was seen running from the scene of the crime along with his brother, who appeared to be holding something. When Zepeda caught up to M., defendant confronted Zepeda, demanding M.'s release. A short time later, property identified as belonging to Zepeda and taken in the burglary was located in the garage of defendant's home. Defendant had left the home, knowing Zepeda had just accused his brother of the burglary. Defendant's presence near the scene of the crime, coupled with his flight, and the location of the property within his home all lead to the reasonable conclusion he knew of the presence of stolen property within his garage.

## II.    The Instructions Were Proper

At trial, the jury was instructed regarding the elements of burglary as follows:

> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1.  The defendant entered a building,
>
> "AND
>
> "2.  When he entered a building he intended to commit theft.
>
> "To decide whether the defendant intended to commit theft, please refer to the separate instructions that I will give you on those crimes.
>
> "A burglary was committed if the defendant entered with the intent to commit theft. The defendant does not need to have actually committed

9.

theft as long as he entered with the intent to do so.  The People do not have to prove that the defendant actually committed a theft.  [¶] … [¶]

"The People allege that the defendant intended to commit a theft.  You may not find the defendant guilty of burglary unless you all agree that he intended to commit a theft at the time of the entry."

The trial court never provided an instruction defining theft.  Defendant argues the trial court's failure to give an instruction defining the elements of theft, on its own motion, rendered the burglary instruction incomplete.  The People argue defendant's failure to request an instruction defining theft forfeits his claim on appeal.  Defendant responds his claim is not forfeited as the purported error affected his substantial rights.[3]  (§ 1259.)  We need not determine whether defendant's claim was forfeited because assuming arguendo it was preserved, we conclude the instructions were adequate.

It is well settled a trial court has a duty to instruct the jury "on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case."  (*People v. Montoya*, *supra*, 7 Cal.4th at p. 1047.)  It is likewise settled an instruction based upon the language of the statute defining the crime is generally appropriate and "ordinarily sufficient when the defendant fails to request amplification," especially if "the jury would have no difficulty understanding the statute without guidance."  (*People v. Poggi* (1988) 45 Cal.3d 306, 327.)  The crime of burglary is defined in section 459 as entry into a building "with intent to commit grand or petit larceny or any felony."  As we have already noted, the trial court instructed the jury that burglary consisted of the entry into a building with the intent to commit theft.  Thus, the question is whether the term "theft" is commonly understood as encompassing the definition of theft by larceny.  We conclude it is.

Theft by larceny "requires the taking of another's property, with the intent to steal and carry it away."  (*People v. Gomez* (2008) 43 Cal.4th 249, 254-255.)  Indeed,

---

[3]Defendant further argues in the alternative that the failure to request the instruction constituted ineffective assistance of counsel.

CALCRIM No. 1800 defines the crime of theft by larceny as the taking of another's property, without the owner's consent, with the intent to deprive the owner of the property, and moving the property even a short distance and keeping it for any period of time. The elements of theft by larceny simply do not differ from the everyday understanding of the word "theft." One dictionary defines theft as "the act or an instance of stealing; larceny." (American Heritage Dict. (4th ed. 2006) p. 1793.) It defines stealing as "tak[ing] (the property of another) without right or permission." (*Id*. at p. 1696.) Webster's New World dictionary provides a similar definition of theft ("the act or an instance of stealing; larceny") and stealing ("tak[ing] or appropriat[ing] (another's property, ideas, *etc*.) without permission, dishonestly, or unlawfully, esp. in a secret or surreptitious manner"). (Webster's New World Dict. (3d college ed. 1989) pp. 1386, 1311.) These definitions demonstrate the common usage of the word "theft" encompasses the definition of theft by larceny. Although the dictionary definition does not explicitly include the intent to deprive the owner of the property, that meaning is implicit within the meaning of theft.

As the People point out, the prevalence of theft within our society is such that almost everyone has either been a victim, or knows a victim, of theft. It is commonly understood when a person steals property, that person has no intention of returning it to its rightful owner. The prevalence of common devices placed in automobiles, cellular telephones, and other electronics to locate property after it has been stolen demonstrates the understanding theft includes the intent to deprive the owner of property permanently. Because the term "theft" is commonly understood to include the elements of larceny, the trial court did not have a sua sponte duty to instruct on the definition of theft.

Indeed, at least one other court has reached a similar result. In *People v. Corral* (1943) 60 Cal.App.2d 66, 68-69, the defendant was charged with burglary after entering a store, concealing a suit on his person and leaving. The trial court instructed the jury a defendant commits a burglary when the defendant enters a building with the intent to commit theft. (*Id*. at pp. 70-72.) The defendant argued on appeal that because the trial

11.

court failed to provide an instruction defining the term "theft," the jury was "left in ignorance of the precise nature" of the defendant's intent. (*Id*. at p. 72.) In rejecting the claim, the court explained the only type of theft shown by the evidence was larceny. And because the showing of intent was so clear, "we do not see how the jury could have had any doubt about it, or misunderstood the instruction." (*Ibid*.)

Likewise here, the facts of this case are not susceptible to any intent other than the intent to commit larceny. Zepeda came home to find his window-mounted air conditioning unit removed, and a television, which had previously been inside, sitting just outside the same window. He observed two people running from his home, one of whom appeared to be carrying something. Upon further inspection, he noted several items missing from his home. These items were located in defendant's garage a short time later. Based upon the facts of the case, it is apparent the entry of the home was with the purpose to commit a theft, and the perpetrator intended to permanently deprive Zepeda of the property.

Because the trial court had no duty to provide any further instruction regarding the definition of theft, we find no error in the court's instruction. To the extent defendant argues the instruction, as given, failed to alert the jury of the requirement he possess the intent to commit a theft prior to entering the home, we reject the claim. The jury was repeatedly told in the court's instruction that the People were required to prove defendant possessed the intent to commit a theft at the time of entry into the home. Furthermore, the prosecutor highlighted this requirement in closing argument. Indeed, it was apparent from the trial that burglary in fact occurred; the question was whether defendant participated in the burglary. Considering the jury instructions, in light of the evidence and arguments of counsel, there is no reasonable possibility any juror did not understand defendant had to possess the intent to steal at the time he entered the home.

Anticipating this conclusion, defendant argues his trial counsel was ineffective for failing to request additional instructions defining theft. In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate trial counsel's

12.

performance fell below the standard of reasonableness and there is a reasonable probability the result would have been more favorable had the defendant's counsel provided adequate representation. (*Strickland v. Washington* (1984) 466 U.S. 687, 694; *People v. Bolin* (1998) 18 Cal.4th 297, 333.) However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington*, *supra*, at p. 697.)

Even if we were to assume defendant's counsel was deficient in failing to request additional instructions defining theft for the jury, it is apparent from the evidence defendant would not have received a more favorable result had such an instruction been provided. As we have already explained, at trial there was no question or argument as to whether a burglary occurred. Zepeda left his home earlier that day and returned to find an air conditioning unit removed from a window, a television placed outside the window, property missing, and defendant and his brother running from the residence. The stolen property was recovered at defendant's home shortly thereafter. As our Supreme Court has explained, the fact a defendant completes a theft after entry into a home is strong circumstantial evidence of intent to steal upon the entry. (*People v. Abilez*, *supra*, 41 Cal.4th at p. 508; see *People v. Du Bose*, *supra*, 10 Cal.App.3d at p. 551 ["There is no better proof that [defendant] entered the [building] with intent to commit robbery than a showing he did in fact commit robbery after his entry"].) The issue presented at trial was whether defendant also participated in the crime, not whether he possessed the intent to commit a theft when he entered the home. The state of the evidence compels the conclusion there is no reasonable probability defendant would have received a more favorable result had the trial court defined theft for the jury. As such, defendant's claim fails.

**III.    The Manner in Which Trial Counsel Described Defendant's Prior Conviction Did Not Constitute Ineffective Assistance of Counsel**

Prior to trial, the trial court ruled defendant could be impeached with his prior conviction of criminal threats in violation of section 422.  The impeachment evidence was limited to the fact of the prior conviction, which the court determined to be a crime of moral turpitude.  During his direct examination of defendant his counsel inquired as to whether he had a prior felony conviction for "terrorist threats."  He admitted his prior conviction, noting he pled guilty to the charge.  On cross-examination the prosecutor revisited the subject, highlighting the fact defendant suffered a prior conviction for "criminal threats."

During his initial closing argument, the prosecutor only noted defendant suffered a prior felony conviction involving moral turpitude, which could be used to determine his credibility.  Defense counsel, in his closing, argued defendant's prior conviction for "terrorist threats" had nothing to do with theft, it only showed he had "threaten[ed] somebody with harm" in the past.  Defense counsel pointed out defendant had pled guilty to that offense because he was guilty, insinuating he proceeded to trial on this case because he was not guilty.  Furthermore, defense counsel defined the crime for the jury as "threatening somebody with harm."  In rebuttal, the prosecutor agreed with defense counsel that defendant's prior conviction was for "threatening someone."

On appeal, defendant argues his trial counsel was ineffective for referring to his prior conviction of violating section 422 by its former heading of "terrorist threats" rather than its current heading of "criminal threats."  He claims referring to the crime in that manner "unnecessarily associated [defendant] with … political terrorists and the war on terror."  He claims the prejudice from these references was "monumental."  We disagree.

To establish ineffective assistance of counsel on appeal, defendant must demonstrate his trial counsel rendered inadequate assistance and a reasonable probability he would have received a more favorable outcome at trial had his counsel provided adequate representation.  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694; *People v.*

*Bolin*, *supra*, 18 Cal.4th at p. 333.) Defendant makes little attempt to demonstrate, as is his burden, that the brief and isolated references noted above to the term "terrorist threats" caused him any prejudice. Rather, he simply argues "[w]rongly naming the crime in … section 422 has no probative value, while the prejudicial impact of associating [defendant] with terrorists is monumental." On the facts of this case, we find no prejudice.

To the extent defendant likens the brief and isolated references to the term "terrorist threats" to the introduction of propensity evidence, we reject the claim. The title was simply used as a common description of the crime for which defendant had been convicted. There was never any insinuation defendant was somehow connected to political acts of terror. To the contrary, prior to 2000, the crime defined in section 422, currently denominated "criminal threats," was entitled "terrorist threats." (Stats. 2000, ch. 1001, § 4; Stats. 1988, ch. 1256, § 4, p. 4184; *People v. Toledo* (2001) 26 Cal.4th 221, 224, fn. 1.) The text of the statute was the same both before and after the amendments. (*Toledo*, at p. 224, fn. 1.) Thus, until 2000, a violation of section 422 was labeled a "terrorist threat" even though the body of the statute did not reference "terrorists" or "terrorism." (*People v. Moore* (2004) 118 Cal.App.4th 74, 78–79.) Even after its amendment in 2000, courts sometimes still referred to violations of section 422 as "terrorist threats." (See, e.g., *People v. Brown* (2004) 33 Cal.4th 892, 916 (dis. opn. of Brown, J.); *In re Q.N.* (2012) 211 Cal.App.4th 896, 899; *People v. Gerold* (2009) 174 Cal.App.4th 781, 784; *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430.) Indeed, although defendant was convicted of the crime in 2008, his California Law Enforcement Telecommunication System report, which was admitted into evidence in the bifurcated trial on his priors, listed defendant's prior conviction as "threaten crime with intent to terrorize."

The evidence was never used as potential character evidence in any way. In fact the jury was specifically limited regarding the use of the evidence solely as to the issue of credibility. No attempt was made to discuss the underlying crime, nor was any

insinuation made that by virtue of the prior crime defendant committed the current burglary. To the contrary, in closing argument defense counsel argued just the opposite: a prior conviction for "terrorist threats" had nothing to do with theft. Defense counsel's reference to the prior offense was not such as to liken defendant to a terrorist. Rather, the prior was mentioned in an exculpatory manner, with counsel arguing that when defendant had in fact committed a crime in the past, he pled to the offense. Furthermore, the jury was expressly informed it could only use the fact of defendant's prior conviction as bearing on defendant's credibility and for no other purpose.

Moreover, to the extent the jury would have considered the description of "terrorist threats" as one inferring defendant had a bad character and propensity to commit unsavory crimes, we note the association would have had much more impact on the brandishing charge than on the burglary charge. Zepeda testified defendant brandished a knife and made several comments to him such as "what you going to do now." Despite the characterization of his prior as one of "terrorist threats," the jury acquitted defendant of the only charge even remotely similar in nature to a threat. Clearly, the description did not prevent the jury from considering the charges based only upon the evidence. Where a jury acquits a defendant of some charges, and convicts on others, it shows the jury's ability to consider each count on the evidence presented and nothing more. (See, e.g., *People v. Smith* (2003) 30 Cal.4th 581, 617.) On this record, defendant has failed to demonstrate there is a reasonable probability he would have received a more favorable outcome had his counsel not described his prior offense as "terrorist threats." Therefore, his claim fails.

## IV. The Restitution Order Was Proper

At the sentencing hearing, the trial court ordered defendant to pay $1,299 to the victim in direct restitution. Defense counsel never objected to this order. As defendant acknowledges, the failure to object to a restitution order in the trial court forfeits the claim on review. (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075.) Anticipating this

result, defendant asserts his trial counsel was ineffective for failing to object to the restitution order. We find no error.

Defense counsel's failure to object rarely establishes ineffective assistance. (*People v. Avena* (1996) 13 Cal.4th 394, 444–445.) "[W]hen the reasons for counsel's actions are not readily apparent in the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the appellate record discloses '"no conceivable tactical purpose"' for counsel's act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 ["'"[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] … unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding"]; *People v. Ray* (1996) 13 Cal.4th 313, 349 ["In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission"].)

Here, we cannot say there was no reasonable choice not to object to the restitution amount. According to the probation report filed December 28, 2012, Zepeda suffered loss for "stolen or damaged property" in the amount of $1,299. Defendant notes, however, a victim impact statement dated two weeks earlier stated Zepeda had "recovered most of [his] property" and listed the amount of loss at "0." Consequently, his counsel was ineffective for failing to object to the restitution amount. We disagree.

Because the victim impact statement was completed prior to the probation report, defense counsel could have had knowledge the probation officer spoke to the victim about the loss. Indeed, according to the victim's statement, he recovered "most" of his property. Zepeda testified "some" of his property was returned, and specifically noted the video games were not. Defense counsel may have been aware the probation officer had obtained additional information regarding the loss. Furthermore, the probation report

17.

ordered restitution for stolen *or* damaged property.  The evidence showed Zepeda's air conditioning unit was removed from his window.  Through his investigation, defense counsel could have been aware the restitution included damage to the air conditioning unit, the window, or to other items.  Because there was no objection to the order, no evidence was developed on the issue.  Therefore, we cannot say the failure to object was not the result of defense counsel's possession of additional information.  Likewise, it is impossible to determine from this record whether there is a reasonable probability of a more favorable result.  As such, defendant's claim must fail.

### DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
OLIVER, J.*

---

*Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18.