Filed 2/22/21  P. v. Belton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090374 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE002634) |
| v. | |
| RONALD LEE BELTON, JR., | |
| Defendant and Appellant. | |

A jury found defendant Ronald Lee Belton, Jr., guilty of attempted burglary.  In a bifurcated proceeding, defendant admitted one prior conviction under the three strikes law and five prior convictions with prison terms under section 667.5, subdivision (b).  On appeal, he contends:  (1) insufficient evidence supports his conviction for attempted burglary because he never took a direct but ineffectual step toward burglarizing the house; and (2) the prior prison term enhancements must be vacated based on the retroactive application of Senate Bill No. 136 (Senate Bill 136).  We will direct the trial

1

court to strike defendant's prior prison term enhancements. We otherwise affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Maria G. and other members of her family owned a rental house on Riverside Boulevard in Sacramento. On February 9, 2019, the house was vacant, and Maria G. was renovating it in preparation for putting it on the rental market. That day, they washed the windows and reinstalled the screens. The screens were installed from inside the house. The screens had no dents, pry marks, or other damage. At about 6:00 that evening, Maria G. locked the doors and windows and left.

The next day between about 8:00 a.m. and 9:00 a.m., Eloisa M. was walking on Riverside Boulevard when she saw a man at the side gate of Maria G.'s house. When the man saw Eloisa M., he dropped his hand from the latch on the gate and leaned onto a garbage or recycling bin. Eloisa M. did not get a good look at the man, but she noticed he was about five feet, nine inches tall and was wearing loose pants and a jacket with a fake fur collar. Eloisa M. continued walking to the end of the block and then ran home to get her husband, Dan M. Eloisa M. and Dan M. then got in their car, drove to Maria G.'s house, and parked in front of it. Five minutes had passed, at most, since Eloisa M. had walked past the house. The man she had previously seen was still at the house. Dan M. identified him at trial as defendant.

Eloisa M. and Dan M. remained in their car and observed for about 15 minutes. During that time, defendant climbed onto a blue recycling bin and tried to climb over the fence but fell. Dan M. called 911 and told the operator that a man was climbing the fence at Maria G.'s address and trying to get into the backyard. After telling someone at a neighboring house about what they had seen, Eloisa M. and Dan M. left for church.

Dexter M. lived next door to Maria G.'s house. At approximately 8:00 or 9:00 on the morning of February 10th, someone came to his door and told him about something

2

happening outside. Dexter M. reported to the police that he went outside and saw a man walk up to the fence on the left side of Maria G.'s property, jump over the fence, and disappear into the backyard. After some time, the man reemerged by jumping back over the fence on the right side of the property. At trial, Dexter M. initially testified that he had not seen the man jump over the fence. He then testified that he did not remember whether he had seen the man jump over the fence, but when he spoke with the police, he told them the truth. The man had long black dreadlocks and looked like defendant but was facing away from Dexter M., so Dexter M. did not see his face and could not make an identification at trial. Dexter M. watched the man for about 30 minutes, until the police arrived and arrested defendant.

At about 9:20 a.m., Sacramento Police Officer Mark Phillips arrived at Maria G.'s house in response to a call about a suspect outside a vacant house. When Officer Phillips arrived, he saw defendant, who matched the description he had received, near the property's north fence. Officer Phillips arrested and searched defendant and found a large set of keys in his possession. Later that morning, Officer Jacob McCloskey went to the house and met Maria G. and her brother there. Officer McCloskey walked around the house with Maria G. and her brother. During this inspection, they found three damaged window screens. One of the screens had been cut, its frame was bent, and it was hanging ajar. Another frame was "barely hanging" off the window. The third was "mangled" and was lying on the ground. Two of the damaged screens were in back of the house, and the other was on the side. In addition, three window frames, on the back and side of the house, had pry marks on them. According to Officer McCloskey, who had investigated at least 50 burglaries, such marks usually indicate that someone tried to pry off a window screen in order to enter the house. In his opinion someone had tried to enter Maria G.'s house by prying off the window frames.

Officer Phillips, who returned to the house after driving defendant to jail, also examined the broken screens and thought that it looked like an instrument had pried

3

them, and that the damage could have been caused by the keys defendant possessed when he was arrested. Officer Phillips had investigated many burglaries. The police lifted two fingerprints from the frames of the damaged screens, but they did not match defendant's fingerprints. If someone had installed the screens the previous day, it was possible their fingerprints would still be on the frames.

Defendant was charged with one count of attempted second degree burglary (Pen. Code, §§ 664/459 [statutory section references that follow are to the Penal Code unless otherwise stated.]). Two prior serious and/or violent felonies were alleged under sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d), the three strikes law, and six prior felony convictions resulting in prison terms were alleged under section 667.5, subdivision (b).

Following a trial, the jury found defendant guilty as charged of attempted burglary. In a bifurcated proceeding, defendant admitted one prior conviction under the three strikes law and five prior convictions with prison terms under section 667.5, subdivision (b).

The court imposed an aggregate sentence of seven years in state prison, as follows: the middle term of one year, doubled under the three strikes law, plus one year for each of the five priors under section 667.5, subdivision (b).

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends that the evidence was insufficient to support his conviction for attempted burglary. He argues that there was no evidence that he committed "any overt act in furtherance of the burglary." He reasons he "was merely seen by the house touching the latch on the gate of the house by a couple of neighbors." He further argues that there was insufficient evidence that he harbored the specific intent to commit a theft.

4

Burglary requires entry into "any house . . . with intent to commit grand or petit larceny or any felony . . . ." (§ 459.) Attempt requires "a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) The direct but ineffectual act "need not be the last proximate or ultimate step toward commission of the crime . . . , nor need it satisfy any element of the crime," but it must go beyond mere preparation. (*People v. Superior Court (Decker)* (2007) 41 Cal.4th 1, 8.) " '[P]reparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made.' [Citations.]" (*Id.* at p. 8.) " ' "[I]t is sufficient if it is the first or some subsequent act directed towards that end after the preparations are made." ' " (*Ibid.*) And "[w]henever the design of a person to commit crime is clearly shown, slight acts in furtherance of the design will constitute an attempt." (*Ibid.*) When the evidence justifies a reasonable inference of felonious intent, the verdict may not be disturbed on appeal. (*People v. Matson* (1974) 13 Cal.3d 35, 41.)

Where the sufficiency of evidence is challenged on appeal, we review the record in the light most favorable to the judgment to determine whether it discloses substantial evidence. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Substantial evidence is evidence that is "reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*) If substantial evidence supports the verdict, we defer to the fact finding. (*Ibid.*) We will not set aside judgment for insufficient evidence unless it clearly appears, "that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Here, there is substantial evidence of direct but ineffectual acts toward the commission of burglary. Defendant acted suspiciously at the gate of a vacant house where he had no business. He then entered the backyard by leaping over a fence and remained there unseen for some time while the neighbor watched and waited for the

5

police to arrive. After he reemerged, it was discovered that three window screens, which had been undamaged the previous evening, were now badly damaged. Two of the damaged screens were in back of the house, and the other was on the side, indicating that defendant attempted to gain entry several times. In addition, three window frames, on the back and side of the house, had pry marks on them. According to Officer McCloskey, who had investigated at least 50 burglaries, these pry marks indicated that someone tried to pry off a window screen in order to enter the house. Defendant was found and arrested at the property carrying a large set of keys that were capable of making the pry marks. From these facts, a jury could reasonably conclude defendant had specific intent to burglarize the house and his actions went beyond mere preparation.

The foregoing facts also justify a reasonable inference of felonious intent because the evidence supports the inference that defendant attempted to gain entry multiple times through three different windows by forcibly prying open the window frames. Defendant's persistent attempts to enter Maria G.'s home surreptitiously without her permission suggest he wished to do something inside the residence that Maria G. would not have permitted. (See *People v. Frye* (1985) 166 Cal.App.3d 941, 947 [inferring intent to steal from, among other circumstances, the fact that the defendant's entry was unauthorized].) Indeed, "burglarious intent can reasonably be inferred from an unsuccessful entry alone." (*People v. Martin* (1969) 275 Cal.App.2d 334, 339; *People v. Osegueda* (1984) 163 Cal.App.3d Supp. 25, 29-30 [a " 'felonious intent to commit theft may be inferred from the unlawful entry alone' "].) No evidence adduced at trial suggested an innocent or non-felonious reason for defendant's conduct. (See *People v. Jordan* (1962) 204 Cal.App.2d 782, 786-787 ["the fact that the building was entered through a window . . . without reasonable explanation of the entry, will warrant the conclusion by a jury that the entry was made with the intention to commit theft"]; *Martin,* at p. 339 [finding sufficient evidence of intent to steal or commit a felony where the

6

circumstances were without reasonable explanation].)  Thus, we reject defendant's claim that there was insufficient evidence of felonious intent.

II

*Senate Bill 136*

Defendant claims his prior prison term enhancements must be vacated based on the retroactive application of Senate Bill 136.  The People agree.

On October 8, 2019, the Governor signed Senate Bill 136 (2019-2020 Reg. Sess.), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1).  Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to those who have served a prior prison sentence for a sexually violent offense, as defined.  The amended provision states in pertinent part:  "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code, provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended."  (§ 667.5, subd. (b).)

We agree with the parties that the amendment to Senate Bill 136 should be applied retroactively in this case.  Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation.  (See *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307 [noting "the role of a court is to determine the intent of the Legislature"].)  Generally speaking, new criminal legislation is presumed to apply

7

prospectively unless the statute expressly declares a contrary intent. (§ 3.) However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*Lara,* at p. 308.) "A new law mitigates or lessens punishment when it either mandates reduction of a sentence or grants a trial court the discretion to do so. [Citation.]" (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 56.)

Here, Senate Bill 136 narrowed who was eligible for a section 667.5, subdivision (b) prior prison term enhancement, thus rendering ineligible many individuals, including defendant who served prior prison sentences based on prior convictions for robbery (§ 211), negligent discharge of a firearm (§ 246.3), failure to register as a sex offender (former § 290, subd. (g)(2)), and two counts of failure to register as a sex offender (§ 290.018, subd. (b)). None of these offenses qualify as a sexually violent offense under Welfare and Institutions Code, section 6600, subdivision (b). There is nothing in the bill or its associated legislative history that indicates an intent that the court not apply this amendment to all individuals whose sentences are not yet final. Under these circumstances, we conclude *Estrada*'s inference of retroactive application applies. (See, e.g., *People v. Nasalga* (1996) 12 Cal.4th 784, 797-798 [applying *Estrada* inference of retroactivity to legislative changes to § 12022.6, subds. (a) and (b) enhancements].) Accordingly, we will direct the trial court to strike defendant's prior prison term enhancements and "remand the matter for resentencing to allow the court to exercise its sentencing discretion in light of the changed circumstances." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682.)

## DISPOSITION

The trial court is directed to strike defendant's section 667.5, subdivision (b) prior prison term enhancements.  In all other respects, the judgment is affirmed.  The matter is remanded for resentencing.

                                              _____

                                              HULL, J.

We concur:

_____

RAYE, P. J.

_____

MAURO, J.