Filed 12/17/21  P. v. Tafoya CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FIDEL ISAAC TAFOYA, <br><br> Defendant and Appellant. | F080685 <br><br> (Super. Ct. No. F18908058) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County. Houry A. Sanderson, Judge.

Gabriel Bassan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Smith, Acting P. J., Meehan, J. and Snauffer, J.

## **INTRODUCTION**

Appellant Fidel Isaac Tafoya was convicted by jury of first degree residential burglary (Pen. Code,[1] §§ 459/460, subd. (a)), and sexual battery (§ 243.4, subd. (e)(1)). In addition, the jury found true an enhancement alleging that a nonaccomplice was present during the commission of the burglary. (§ 667.5, subd. (c)(21).) The trial court sentenced Tafoya to an aggregate term of 13 years in state prison.

On appeal, Tafoya contends: (1) there was insufficient evidence to support his burglary conviction because the evidence failed to show he had the intent to commit theft, sexual battery, or rape; (2) the trial court erred in denying his motion for acquittal on his burglary conviction; and (3) his trial counsel violated his Sixth Amendment right to control the objective of his defense by conceding Tafoya had entered the victim's apartment with the intent to commit a lesser offense. We affirm.

## **PROCEDURAL HISTORY**

On October 31, 2019, the Fresno County District Attorney's Office filed a second amended information charging Tafoya with (1) first degree residential burglary (§§ 459/460, subd. (a), count 1), while a nonaccomplice was present (§ 667.5, subd. (c)(21)), and misdemeanor sexual battery (§ 243.4, subd. (e)(1), count 2). The information further alleged Tafoya had suffered a prior strike conviction (§§ 667, subds. (a)(1) & (b)–(j), 1170.12, subd. (b)).

On October 31, 2019, Tafoya's jury trial commenced.

On November 7, 2019, Tafoya admitted the prior strike allegation.

On November 12, 2019, Tafoya was found guilty of both counts, and the jury found true the remaining enhancement allegation.

On January 22, 2020, Tafoya was sentenced to an aggregate term of 13 years in state prison.

---

[1] All undefined statutory citations are to the Penal Code.

On January 24, 2020, Tafoya filed a timely notice of appeal.

## FACTS

M.T. lived with her three children, ages six, nine, and 11, in an apartment. On November 22, 2019, sometime before 2:00 a.m., M.T. was asleep in bed with her six year old when she felt a hand move up her shirt, touch her chest and stomach, and grope her. M.T. thought her son was searching for her cell phone. M.T. told her son to " 'go to sleep.' " She then heard someone "mumbling," trying to mimic a child.

From the moonlight entering her room, she could see someone kneeling over her. The person, whom M.T. later identified as Tafoya, had white hair and was wearing a windbreaker jacket and pants. M.T. thought she recognized Tafoya from her job. Tafoya did not have permission to be in her apartment.

M.T. got up and exclaimed, " 'You're not my son. What the hell you doing in my house?' " Tafoya abruptly stood up and quickly exited the front door of the apartment. M.T. chased him outside. Tafoya hid inside some bushes nearby.

M.T. banged on her cousin's window to seek help. Tafoya emerged from the bushes and took a defiant stance against M.T. before returning to the bushes.

M.T. went back inside her apartment to check on her children, who were still asleep. The police arrived within minutes after M.T. and her cousin had contacted them. Responding officers detained Tafoya in an alley nearby. He was wearing a windbreaker jacket, and he was emanating the odor of alcohol. Tafoya also had an identification card on him with the name, "Isaac Tafoya." M.T. identified Tafoya as the intruder.

Later that morning, M.T.'s son found a cell phone in her living room and M.T. found an umbrella on her kitchen table. Neither item belonged to her. M.T. did not notice anything else out of place in her apartment.

When Tafoya was booked into custody, an officer asked Tafoya if the umbrella found in M.T.'s kitchen belonged to him. Tafoya responded affirmatively.

M.T. later gave the cell phone to an investigator with the district attorney's office. The phone had an incoming text message directed to "Isaac," which is Tafoya's middle name. The password associated with the phone was Tafoya's Social Security number. Further, a Chrome browser installed on the phone had associated usernames of "Isaac" and "ikeforpres2020."

## DISCUSSION

### I. Substantial Evidence Shows Tafoya Entered M.T.'s Apartment with the Intent to Commit Theft or a Felony

Tafoya claims there is insufficient evidence to support his conviction for burglary because the prosecutor failed to adduce nonspeculative evidence showing he had the intent to commit theft, sexual battery by restraint, or rape when he entered M.T.'s apartment. We disagree.

#### A. Relevant Legal Principles

Burglary is defined as the entry into "any house, room, *apartment*, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building … with intent to commit grand or petit larceny or any felony …." (§ 459, italics added.) The elements of first degree burglary are (1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony. (§§ 459, 460; *People v. Sample* (2011) 200 Cal.App.4th 1253, 1261.) " ' "While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence." [Citations.]' " (*People v. Holt* (1997) 15 Cal.4th 619, 669–670.)

In reviewing Tafoya's burglary conviction for substantial evidence, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a

4.

reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1508.) " 'If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Miranda* (2016) 2 Cal.App.5th 829, 834.) We may reverse for lack of substantial evidence only if " ' "upon no hypothesis whatever is there sufficient substantial evidence to support" ' the conviction or the enhancement." (*Garcia*, at p. 1508.)

### B.      Analysis

Tafoya entered M.T.'s locked apartment, late at night, and groped M.T. while she was asleep in bed with her six-year-old child nearby. When M.T. awoke and confronted Tafoya, he fled her apartment, assumed a defiant stance when M.T. confronted him outside, and then took flight once again. From this evidence, the jury could reasonably infer M.T. intended to commit rape or theft when he entered M.T.'s apartment.

*People v. Moody* (1976) 59 Cal.App.3d 357 (*Moody*) is instructive. In *Moody*, the defendant entered the victim's locked home at night. When he was discovered, he had his arms outstretched toward a 15-year-old girl, who was dressed only in a nightgown. The defendant ran when he was discovered and he ran again when he was confronted by a police officer. (*Id.* at p. 363.) Based upon these facts, the appellate court held, "the jury could have concluded and there was substantial evidence to support a finding that [the] appellant had either entered the house with an intent to commit theft or to commit rape." (*Ibid.*)[2]

---

[2]      In his reply brief, Tafoya contends the appellate court in *Moody* had also relied upon the fact that the defendant had suffered a prior conviction for burglary, he had previously been arrested for prowling, and that he had given the same exact rationale for fleeing from police in the instant offense as he did following his previous arrest for burglary. Evidence of the defendant's prior convictions and his rationale for fleeing from

Here, as in *Moody*, there was sufficient evidence to support a jury finding of intent to commit theft or rape when Tafoya entered M.T.'s apartment. Unlawful entry, flight from the scene, and failure to provide a plausible reason for being on the premises are sufficient evidence of intent to commit theft to support a conviction of burglary. (See *People v. Martin* (1969) 275 Cal.App.2d 334, 339.) Indeed, " '[b]urglarious intent can reasonably be inferred from an unlawful entry alone.' " (*Ibid.*, quoting *People v. Jordan* (1962) 204 Cal.App.2d 782, 786.)

Tafoya directs this court to a line of authority which purportedly shows the evidence adduced at trial was insufficient to support his burglary conviction. As each case necessarily depends upon its own facts, none of the cases he directs this court to are instructive. (*People v. Padilla* (1962) 210 Cal.App.2d 541; *People v. Tidmore* (1963) 218 Cal.App.2d 716; *People v. Greene* (1973) 34 Cal.App.3d 622.)

Insofar as Tafoya observes that he did not actually steal anything, rape M.T., or restrain her when he groped her, the jury was persuaded beyond a reasonable doubt that Tafoya possessed the requisite intent to support his conviction for burglary. The fact that Tafoya may have subsequently abandoned his initial intent during the course of the burglary does not undermine the jury's finding.

Tafoya contends the jury, faced with two reasonable inferences that could be drawn from the circumstantial evidence presented, was required to reject the inference pointing to guilt and to adopt the inference favoring innocence. Tafoya's argument does not assist him.

---

police was discussed in the context of a challenge to the relevance and admissibility of this evidence. (See *Moody*, *supra*, 59 Cal.App.3d at p. 362.) The appellate court did not rely on these facts in determining whether substantial evidence supported the defendant's conviction for burglary.

" 'Although the jury is required to acquit a criminal defendant if it finds the evidence susceptible of two reasonable interpretations, one of which favors guilt and the other innocence, it is the jury, not the appellate court, which must be convinced of his guilt beyond a reasonable doubt.  [Citation.]  We review the entire record in the light most favorable to the judgment and affirm the convictions as long as a rational trier of fact could have found guilt based on the evidence and inferences reasonably drawn therefrom.' " (*People v. Massie* (2006) 142 Cal.App.4th 365, 373, quoting *People v. Millwee* (1998) 18 Cal.4th 96, 132.)  "Thus, ' " '[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*Massie*, at p. 373, quoting *People v. Perez* (1992) 2 Cal.4th 1117, 1124.)

Tafoya further contends the evidence was insufficient to show he intended to commit a sexual battery by restraint.  Tafoya observes that the prosecutor acknowledged this was probably not Tafoya's intent when he had entered M.T.'s apartment, though it was possible.  The evidence supporting the conclusion that Tafoya intended to restrain M.T. is admittedly thin, but we need to resolve whether it was sufficient to support Tafoya's conviction for first degree burglary.

As discussed, there is substantial evidence showing Tafoya entered M.T.'s apartment with the intent to commit rape or theft.  Assuming, arguendo, the prosecutor failed to adduce sufficient evidence showing Tafoya had intended to restrain M.T., that does not compel reversal of Tafoya's conviction.  "[W]hen one of the theories presented to a jury is factually inadequate, such as a theory that, while legally correct, has no application to the facts of the case, we apply a different standard … we affirm 'unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory.' " (*People v. Perez* (2005) 35 Cal.4th 1219, 1233, quoting *People v. Guiton* (1993) 4 Cal.4th 1116,

1130.) Our independent review of the record discloses no basis to conclude the jury probably relied upon this unsupported theory of guilt.

We conclude the circumstantial evidence adduced at trial supports the inference that Tafoya had entered M.T.'s apartment with the requisite intent to support his conviction for first degree burglary. Tafoya's assertions to the contrary are unpersuasive.

## II. Tafoya's Motion for Judgment of Acquittal Was Properly Denied

Tafoya contends the trial court erred in failing to grant his motion for acquittal (§ 1118.1) on the first degree burglary charge. We disagree.

"In determining whether the evidence was sufficient either to sustain a conviction or to support the denial of a [motion for judgment of acquittal], … ' " 'We do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.]' " ' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1182–1183, overruled on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

In part I, *ante*, we concluded there is substantial evidence to support Tafoya's conviction for first degree burglary. Applying the same standard as we did in part I of this opinion, we conclude Tafoya's motion for acquittal on the first degree burglary charge was properly denied for the reasons previously stated.

## III. Trial Counsel Did Not Concede that Tafoya Was the Intruder

Finally, Tafoya contends his trial counsel conceded he was the intruder in violation of Tafoya's Sixth Amendment right to choose the objective of his defense. (*McCoy v. Louisiana* (2018) 138 S.Ct. 1500 (*McCoy*).) According to Tafoya, he directed his trial counsel to maintain his factual innocence.

8.

We conclude Tafoya's argument is without merit. The record does not support Tafoya's contention that defense counsel conceded the issue of identity, or that Tafoya vigorously objected to trial counsel's proposed trial strategy.

## A. Background

On September 12, 2019, before Tafoya's jury trial commenced, Tafoya made a *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) motion, requesting that his trial counsel be relieved, and that he be appointed new counsel. A pretyped declaration attached to Tafoya's written motion requested his trial counsel be relieved for the following reasons: trial counsel failed to confer with Tafoya concerning the preparation of his defense, he refused to communicate with Tafoya, trial counsel failed to present an affirmative defense at Tafoya's preliminary hearing, he failed to file motions critical to Tafoya's defense, trial counsel was assuming "the role of a surrogate prosecutor," and trial counsel had Tafoya subjected to psychological testing.

At a hearing on his motion, Tafoya claimed trial counsel failed to set forth " 'a positive defense' " to the charges pending against him. According to Tafoya, his trial counsel remained focused on the "worst case scenario."

In response to Tafoya's allegations, trial counsel explained that at one point, Tafoya had proposed defending the burglary charges against him by arguing that based upon his prior conviction for lewd acts with a minor under the age of 14 (§ 288), if Tafoya had intended to commit a sex offense when entering M.T.'s apartment, he would have targeted the children instead of M.T. At some point thereafter, Tafoya became adamant that he was not in M.T.'s apartment.

Tafoya lamented that trial counsel apparently felt that Tafoya's case was "hopeless" and "he just chose to believe the prosecution's side of the story." Defense counsel made the following comments in response:

> "[DEFENSE COUNSEL]: And in fairness to Mr. Tafoya, I believe—if I'm accurate, I believe I did tell him in jail, 'Mr. Tafoya, I don't believe your story.

9.

But the beauty of it is I won't be on your jury.' So—and he wanted me to defend the sexual battery charge. And I was like, 'I'm not going to.' I'm going to defend —*I'm not going to concede it*, but I'm not going to focus my main defense on that. The main defense is what was this person's intent at the time they entered the apartment? Because I believe I would lose credibility on trying to establish it wasn't him...." (Italics added.)

At the conclusion of the hearing, the trial court denied Tafoya's *Marsden* motion. The record is completely silent as to whether Tafoya objected to trial counsel's proposed strategy.

On October 31, 2019, over a month and a half after his *Marsden* motion was denied, Tafoya's jury trial commenced.

In his closing argument, trial counsel made the following statements, as relevant to this appeal:

> "[DEFENSE COUNSEL]: I would argue that the defendant did not touch an intimate part of the body. I would also point out that this evidence took place last Friday, just a few days ago, and I would think if you don't recall the evidence, you can have a read back of the evidence to refresh your memories. If you have a dispute as to how you remember it, again, you can have a read back. And in deciding this, if you can get there with or without a read back and you can look at the evidence and you can determine that once inside the apartment, you believe that Mr. Tafoya committed all those elements within the apartment sometime after entering it, if you can get there, you get there. *I would say that the evidence isn't there to suggest all the elements, but you have the final say in it*.

> "[DEFENSE COUNSEL]: Now, I would argue that … these are independent of one another. Count 1 and Count 2 are independent of one another. You have two questions within each count. Minimum of two questions. One: Was there a crime committed? Doesn't matter what order—at least in my opinion, doesn't matter what order that you answer the questions. One question was, was a crime committed? Second question was, *who committed the crime or what's the identification of the person? Or you can answer the second way, who was the person?*

> "Hypothetical situation: I walk into Macy's. I go in and I go shopping and I do whatever and I walk out. Who was the one that walked in? It was me. Who was the one that walked out? It was me. Okay. The identification is not an issue. But did I commit a crime? Or to go back, somebody entered the store and went in and started committing all this stuff, stole stuff and whatever else. Did I commit a

10.

crime?*If it were me, yeah.If you can identify me as a person*, did I commit a crime?Yes.What crime did I commit?And that's—the question isn't whether or not this person committed a crime by entering into the apartment, the question is what crime was it, and the prosecution is asserting it was a burglary.So that's what you need to focus on.Not whether or not a crime was committed, but was the crime the crime the prosecution is asserting was committed at the time." (Italics added.)

## B.     Relevant Legal Principles

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; accord, *McCoy*, *supra*, 584 S.Ct. 1500.) Generally, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.' [Citation.] Some decisions, however, are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." (*McCoy*, at p. 1508.)

"Defense counsel can make strategic choices regarding how best to achieve a defendant's objectives, but the defendant chooses those objectives." (*People v. Frederickson* (2020) 8 Cal.5th 963, 993.) Thus, "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." (*McCoy*, *supra*, 138 S.Ct. at p. 1509.) If trial counsel overrides a defendant's autonomy on a fundamental decision that is reserved for the client, the defendant's Sixth Amendment rights are violated. (*Id*. at pp. 1507–1508.) Such an error is structural and not subject to harmless error review. (*Id*. at p. 1511.)

## C.     Analysis

Tafoya contends his trial counsel conceded that he was the intruder at trial, violating his Sixth Amendment right to maintain his absolute innocence. He directs this

court to *McCoy* and *People v. Eddy* (2019) 33 Cal.App.5th 472 (*Eddy*) to support his assertion. As discussed further below, we find both cases factually distinguishable.

In *McCoy*, the defendant faced the death penalty for murdering three members of his estranged wife's family. (*McCoy*, *supra*, 138 S.Ct. at pp. 1505–1506.) McCoy's trial counsel determined that based upon the overwhelming evidence against McCoy, the best strategy to spare him from the death penalty would be to concede his guilt and plead for mercy during the penalty phase of the trial. (*Ibid*.) McCoy directed trial counsel not to make that concession, and to maintain a defense of absolute innocence. (*Ibid*.)

McCoy "vociferously" maintained his innocence and "adamantly objected to any admission of guilt." (*McCoy*, *supra*, 138 S.Ct. at p. 1505.) He requested the trial court remove his appointed counsel prior to the commencement of his trial, he protested during trial counsel's opening statement, he testified at trial "maintaining his innocence and pressing an alibi difficult to fathom," and after trial counsel told the jury McCoy was the killer and he was found guilty of the murders, McCoy moved unsuccessfully for a new trial based upon trial counsel's concession. (*Id*. at pp. 1506–1507.)

The Unites States Supreme Court framed the issue before it as "whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's intransigent and unambiguous objection." (*McCoy*, *supra*, 138 S.Ct. at p. 1507.) The court answered that question in the affirmative and reversed the judgment of conviction. The court held defense counsel's admission of McCoy's guilt had violated McCoy's Sixth Amendment right to maintain his innocence. (*Id*. at pp. 1511–1512.)

In *Eddy*, trial counsel conceded Eddy was guilty of voluntary manslaughter during his closing argument, but argued he was not guilty of greater charges, including first degree murder. (*Eddy*, *supra*, 33 Cal.App.5th at p. 477.) Trial counsel had previously maintained throughout trial that Eddy was factually innocent. (*Ibid*.) After he was found guilty of first degree murder, Eddy made a posttrial *Marsden* motion to remove his appointed counsel. (*Id*. at p. 478.)

12.

The record from the *Marsden* hearing established that while Eddy had temporarily acquiesced to trial counsel's planned concession, he had ultimately instructed trial counsel not to make the concession. (*Eddy*, *supra*, 33 Cal.App.5th at pp. 481–482.) Trial counsel did not deny that he had conceded Eddy's guilt "notwithstanding [Eddy's] desire to maintain his innocence." (*Id*. at p. 479.) The appellate court reversed, finding the circumstances sufficiently similar to *McCoy*. (*Id*. at pp. 481, 484.)

Here, Tafoya argues that by failing to expressly argue that he was not the intruder, trial counsel implicitly conceded that Tafoya was the intruder. His contention is unpersuasive, particularly when considered in light of the clear concessions of guilt made in *McCoy* and *Eddy*.

Here, trial counsel did not emphasize the issue of identity in his closing argument, nor did he concede Tafoya was the intruder in M.T.'s apartment. His argument was primarily focused on the issue of the intruder's intent when he entered M.T.'s apartment. Further, the full context of the record makes clear that any argument made by trial counsel concerning whether Tafoya's conduct had met the elements for committing a sexual battery was premised upon the jury initially finding that Tafoya was indeed the intruder. This was not a concession of Tafoya's guilt.

Trial counsel's statements in his closing argument were fully consistent with the trial strategy he had proposed at the *Marsden* hearing. At no point after trial counsel had discussed his intended strategy did Tafoya object or voice his disagreement. Upon this record, we simply do not know if Tafoya acquiesced to trial counsel's strategy. We are, however, persuaded that trial counsel did not "concede guilt over [Tafoya's] *intransigent and unambiguous* objection." (*McCoy*, *supra*, 138 S.Ct. at p. 1507, italics added.) Tafoya's argument that his Sixth Amendment right to control the objective of his defense was violated is without merit.

## DISPOSITION

The judgment of conviction is affirmed.

13.